**Fredrick J. HAENCHEN, Trustee for the Wild Irrevocable Trust, Appellant,**

v.

**SAND PRODUCTS COMPANY, INC., Appellee.**

No. 52862.

Court of Appeals of Oklahoma, Division No. 2.

Feb. 24, 1981.

Released for Publication by Order of Court of Appeals March 26, 1981.

Jim Brent Smalling, Joseph J. Reinke, Larry D. Barnett, Oklahoma City, for appellant.

Richard D. Hampton, Oklahoma City, for appellee.

BOYDSTON, Judge.

This is an appeal by Fred Haenchen from the trial court's decision to sustain a demurrer at the close of his case-in-chief. The case was a nuisance action brought to recover damages to farm land and to abate flooding allegedly caused by adjacent landowner's earthen dam. The trial judge gave three reasons for sustaining the demurrer:

1. the action was barred by the statute of limitations;

2. the plaintiff not only failed to prove that the defendant created an embankment by virtue of his sand operation, but also failed to prove that the embankment was the proximate cause of the damage sustained by the plaintiff;

3. there was insufficient proof as to the amount of damages to be presented to the jury.

Fred J. Haenchen was named trustee of the Wild Irrevocable Trust in approximately 1972. The trust included a tract of land located in Oklahoma County which at the time was leased as farm land. The northwest corner of his land touches the southeast corner of the land owned by Sand Products Co., Inc. (hereinafter referred to as Sand Products). Sand Products' property lies between Haenchen's land and the North Canadian River. In 1962, Sand Products moved to this site for the purpose of dredging and washing sand from the river bed in order to produce masonry and concrete sand for commercial use. When Haenchen became trustee he discovered his land was being flooded. This problem was partially corrected by Del City through the installation of larger culverts at the intersection nearest his property. The remaining flooding, he claimed, was caused by Sand Products' dam.

Haenchen claims his land floods at the corner adjoining Sand Products because Sand Products, to improve drainage of their operation, has built an embankment which impedes the natural flow of surface waters, causing it to back up and flood his land. Haenchen complained to Sand Products and was told that they were required by the Oklahoma State Water Resource Board to surround their property with the offending embankment so that no surface water could enter and pollute their sand pit. According to Haenchen, a representative from the board denied this and admonished Sand Products not to use their name in this connection again. Efforts on the part of Haenchen to correspond with Sand Products through letters and phone conversations failed.

On May 7, 1975, Haenchen filed suit in the District Court of Oklahoma County seeking an order of abatement and damages in excess of $10,000. Sand Products answered denying the creation or existence of a nuisance and raised the statute of limitations as a defense. A pre-trial conference was held May 20, 1976 and a trial date was set. At the pre-trial conference, damages were limited to crop damage. Subsequently, Haenchen terminated two attorneys in quick succession because he was displeased with the legal representation he was receiving. Trial counsel was then retained by Haenchen and on September 18, 1978 the trial began.

Following Haenchen's case-in-chief Sand Products demurred on the grounds that he had failed to show any damage had been sustained or that any damage had been proximately caused by any act or omission of Sand Products. The trial court sustained the demurrer and plaintiff appeals urging three points of error.

1. that the statute of limitations does not apply to bar this action,

2. that there was sufficient evidence introduced to establish a cause of action; and,

3. that there was sufficient evidence introduced to establish a basis by which the jury could determine damages.

## I

Haenchen contends this action is not barred by the statute of limitations because it is an action for continuing nuisance; therefore the time is calculated as the two years next preceding the filing of the action and not, as defendant would argue, the time the nuisance was created.

*Dobbs v. Missouri Pacific Railroad Company,* 416 F.Supp. 5 (Okl.1975) properly sets forth the law in this area by stating that:

"Under Oklahoma law, the same rule of accrual applies to cases sounding in wrongful diversion of surface waters as in cases sounding in trespass through construction of permanent improvements .... In any case based on a trespass caused by the construction of a permanent improvement, there are, under Oklahoma law, two fact issues which must be resolved before the determination can be made as to whether the action was timely brought, namely, whether the improvement is permanent in character, and whether the trespass is the natural result or obvious consequence of the permanent improvement; if the answer to either of these questions is no, then plaintiffs would be entitled to recover for damages sustained within the limitations period *immediately preceding the filing of their action.*" (emphasis added)

■ In determining that this is not a permanent improvement,[1] the court follows the decision of *Elk City v. Rice,* Okl., 286 P.2d 275 (1955) which held that where a cause of action is abatable, either by an expenditure of labor or money, it will be held not permanent and the statute of limitation will not begin to run until injury is suffered.

Earlier, in *City of Ardmore v. Orr,* 35 Okl. 305, 129 P. 867, (1913) the supreme court held:

"For negligent injuries to realty which result from a cause susceptible of remedy or abatement, the owner is entitled to recover therefor only such damages as had accrued on account of the impaired lost use of his property up to the commencement of his action."

As it appears to us that this is an abatable nuisance, Haenchen will not be barred in bringing his action but must limit proof of damages to the two years next preceding the filing thereof.

## II

■ The question next presented is whether sufficient evidence was presented upon which a recovery could be predicated. In order for a demurrer to be upheld, there must be an entire absence of proof tending to show any right to recover. *Howell v. Olson,* Okl., 452 P.2d 768 (1969). Further, in passing upon a demurrer to the evidence a court must consider as true all the evidence favorable to the party against whom the motion is directed together with all inferences which may reasonably be drawn therefrom while disregarding all conflicting evidence. *Condo v. Beal,* Okl., 424 P.2d 48 (1967).

The issue as presented in this instance must be broken down into two distinct questions both of which must be answered negatively for the demurrer to be upheld by this court. These are:

1. Was there credible evidence presented which tended to show that an embankment was constructed by appellee or its predecessors? and,

2. Was there credible evidence presented which tended to show that that embankment was the proximate cause of appellants injuries?

■ Both questions must be answered affirmatively. While it is true that the evidence and testimony in this case is unorganized, it does tend to show that an artificial embankment was created on the land owned by Sand Products. Mr. Choate testi-

---

1. The issue of "permanency" of the claimed damages could very well change depending on the defensive evidence offered on retrial of this case. See later discussion inter alia.

fied that there was an embankment which had been thrown up very close to the railroad track in such a manner as to cause the natural drainage creek to terminate in a dead end. He further testified that he was familiar with the natural flow of the water in this area and that over the last 30 years it had crossed the sand products area before it reached the river. He also testified that the embankment has been there awhile as it would take time to reach its present height judging from the nature of the operation.

Kenneth Claffke testified that in 1976 he found the railroad culvert blocked on the downstream side by a dam, which is a reference to the embankment. He testified from the exhibits presented that the natural surface water drainage crossed Sand Products' land unless it was stopped by an impediment and that water had been thrown back toward Haenchen's land due to the embankment.

The testimony of Red Hamilton established he had successfully farmed the land prior to the creation of the embankment.

Haenchen testified there had previously been a problem with flooding at the other end of the property which had been corrected by the city and that the remaining water problem was the result of the water now being unable to drain away through the natural flow.

We conclude there are unanswered questions of fact raised by the testimony and that Haenchen met the minimum standards of proof entitling him to have his case submitted to the jury. The jury should have been allowed to determine whether an artificial embankment existed, whether it amounted to a nuisance, and, if so, whether it caused the claimed damages.

### III

Whether there was sufficient proof of damages is perhaps the most difficult question before the court. The pre-trial order erroneously limited the damages to growing crops. Haenchen testified that were it not for the flooding he would have been able to harvest 5,000 bales of hay having a value of $1.00 per bale. Consequently he was losing $5,000 a year. If this had been the only evidence presented to the jury, the trial court's decision would be upheld, as it is the duty of the plaintiff to present not only the market value of the crops when matured and ready for market but also the cost of finishing the cultivation, gathering, preparing and transporting the crops to market which the plaintiff in this case failed to do. *Garrett v. Haworth*, 183 Okl. 569, 83 P.2d 822 (1938). Under these circumstances the jury would not have adequate evidence from which to assess damages.

However, Haenchen's testimony also establishes that he stopped growing crops around the time the action was filed because it would have been futile to plant due to the flooding.

The case of *Murdock et al. v. City of Blackwell*, 198 Okl. 171, 176 P.2d 1002 (1946) clearly sets forth the propositions that:

> "Where a person, injured by the wrongful act of another, uses reasonable care to reduce the loss to him, he can recover from the wrongdoer in full for all damages .... Whether, under all the facts and circumstances in evidence, a person, injured by the wrong done him by another, acted in good faith in an attempt to reduce the damages caused him by such wrongful act, is a question of fact for the jury."

Whether Haenchen acted reasonably in his failure to attempt to grow crops and whether his decision was based upon the existence of the claimed nuisance are issues inextricably intertwined with the other fact issues to be decided by the jury.

In any event, the fact that this testimony was introduced coupled with the offer of proof made by Haenchen's attorneys concerning damages changes the entire character of the decision before us in this particular case.

The issue of "failure to prove damages" in the final analysis distills down to the court's rather rigid application and interpretation of the erroneous pre-trial order limiting the issue of damages to proof of

damage to crops. That pre-trial order was made more than two years before trial, presumably at a time when the court and parties anticipated an early trial and disposition of the case.

Presumably it was made at a time when the only provable damages may have been crop damages. It appears that both the court and the parties overlooked this limitation, probably because of the inordinate delay in the trial and the exchange and shift of Haenchen's trial counsel. Arguably, Haenchen's counsel was at fault in failing to make application to amend the order but the court must also share its part of the blame for failing to correct this oversight. We believe it could have been corrected in mid-trial by a fair and flexible interpretation of the pre-trial order. We do not view a pre-trial order as being "carved in stone." It is a trial tool which is a creature of court rule and is subject to all the rules of interpretation, discretion and flexibility of any other court rule. Its purpose is to narrow the issues, streamline and expedite trials, and not to become a snare or trap for the unwary. It is a procedural "focusing" device which necessarily draws the attention of the court and counsel to this particular case out of a sea of litigation. It provides great benefit to the bench, bar and the litigants themselves but when a trial court rigidly adheres to its confines when it becomes obvious that a material hardship will be worked upon one party, the result becomes a perversion of its true intent. Certainly it could not be argued that had the court permitted the proffered evidence as to "lost rents," it would have made the case reversible. Apparently Haenchen's attorney "discovered" in mid-trial the faulty pre-trial evidentiary restriction and offered proof of the lost rentals for the last two years. We hold that the court abused its discretion in adhering so rigidly to the restrictions of the pre-trial order; that if defendant claimed and proved a genuine surprise, it could have been alleviated, either by a continuance or by an outright mistrial.

We believe the better practice would be to order a "fresh" pre-trial in cases where the original pre-trial attorney has withdrawn or the order has become stale by reason of unusual delay.

In the case at bar damage to growing crops should necessarily extend to include damages for the anticipated loss of crops which Haenchen was prevented from planting by reason of the nuisance, arguably in pursuing his legal duty to mitigate damages.

Had Haenchen been permitted to prove his case under this theory, the jury would have been instructed that the proper measure of damage would be the reasonable rental value of the land during any forced fallow growing season in addition to any loss to growing crops. *Castle v. Reeburgh et al.*, 75 Okl. 22, 181 P. 297 (1919) holds:

> "If no crops were planted or, if planted, failed to come up by reason of the overflow, then the plaintiff's recovery will be the reasonable rental value of the land for such year or years."

Haenchen's attorney made an offer of proof in the record showing that Haenchen would testify he could have rented the land for $3,000 a year, but for the flooding. The trial court erred in not allowing this testimony to be presented to the jury and in sustaining the demurrer.[2]

The parties to this appeal and apparently the trial judge have overlooked the all important issue of abatement. We believe Haenchen is very close (unless his proof is clearly rebutted by Sand Products as to the existence of the offending embankment and the consequent flooding) to being entitled to a directed verdict. This would leave only the issue of damages past, present and possibly permanent for the jury to decide. It is the function of the court to determine at the close of the evidence if the nuisance is

---

**2.** The measure of damages should have been the value of lost or damaged crops or the value of lost rental for the period two years prior to suit being filed and thereafter until trial, *plus* the permanent damage to the land (before and after) or the cost of removing the obstruction, whichever is less. *Castle, supra*; *Keck v. Bruster*, Okl., 368 P.2d 1003 (1962).

abatable or permanent. It also should be noted that Haenchen's evidence failed to directly address this issue. Implicit in his case is the theory that this nuisance is, in fact, abatable. However, this conclusion is speculative at this point, because Sand Products has not presented its evidence. For, if Haenchen's theory prevails and the jury finds that it is abatable, it becomes the trial court's duty, under its equitable powers, to order it removed, prescribing the method, timing and procedure.

It may be the cost of abatement would exceed the value of the flooded land in which case the value of the land would become a question of fact for the jury. *Lynn v. Rainey*, Okl., 400 P.2d 805 (1964); *Keck, supra*. The issue of permanent damages is discussed in *ABC Construction Co. v. Thomas*, Okl., 347 P.2d 649 (1959).

The decisions of the trial court sustaining the demurrer and excluding certain evidence as to the lost rental value of the land are reversed. The case is remanded for further proceedings consistent with this opinion.

BACON, P. J., and BRIGHTMIRE, J., concur.