Homer **BRANCH** and Lois Dell Branch, Plaintiffs,

v.

**MOBIL OIL CORPORATION, and Citation Oil and Gas Corporation, Defendants.**

**No. CIV–90–723–R.**

United States District Court, W.D. Oklahoma.

Dec. 10, 1991.

See also 772 F.Supp. 570.

Gina L. Hendryx, John W. Norman, Norman & Edem, Robert N. Barnes, Patranell Britten, Roy Short, Jacqueline M. Short, Stack & Barnes, Oklahoma City, Okl., Phillip R. Scott, Waurika, Okl., for plaintiffs.

Gary W. Davis, Paul D. Trimble, L. Mark Walker, Crowe & Dunlevy, George E. Sneed, Verland E. Behrens, R. Steven Haught, Daugherty, Bradford, Fowler & Moss, Oklahoma City, Okl., J. Randall Miller, Moyers, Martin, Santee, Imel & Tetrick, Tulsa, Okl., Randle Jones, Denver, Colo., for defendants.

## ORDER

DAVID L. RUSSELL, District Judge.

Before the Court are Defendant Atlantic Richfield Company's ("ARCO") alternative motions to dismiss and for summary judgment.

Based upon the alleged undisputed facts that ARCO is not an operator or owner of the Healdton One Unit and has conducted no oil and/or gas operations within the area enclosed by the boundaries of the Healdton One Unit or on any property described in Plaintiffs' Complaint since 1968, Defendant ARCO maintains that Plaintiffs have no claim for injunctive relief or temporary damages against it as a matter of law.

■ Evidence submitted by Plaintiffs shows, however, that ARCO did and does own oil and gas leases included within the Healdton One Unit. *See* Affidavit of Hal C. Smith (Exhibit "12" to Plaintiffs' Brief).[1]

Accordingly, there is evidence that ARCO was and is a working interest owner in the Unit. *See* Okla.Stat. tit. 52, § 287.1 *et seq.;* Plan of Unitization (Exhibit "27" to Plaintiffs' Brief). The operator of the unit is merely the agent for the lessees who form the unit, *see* M. Merrill, The Legal Status of a Statutory Oil and Gas Production Unit, 10 Okla.L.Rev. 249, 257 (1957), each of whom are entitled to designate a representative of the Operating Committee, which "exercise[s] overall supervision and control over all matters pertaining to unit operations...." Plan of Unitization at ¶ 11.3. Accordingly, to the extent an operator of the Unit created or maintained a nuisance, *see* Okla.Stat. tit. 50, §§ 1 and 5; *Schlirf v. Loosen*, 204 Okla. 651, 232 P.2d 928, 929–30 (1951); *Duncan v. Flagler*, 192 Okla. 18, 132 P.2d 939, 940 (1942), during the time that ARCO was a working interest owner in the Unit, ARCO is liable as a principal for the operator-agent's actions, *see Tenneco Oil Co. v. Allen*, 515 P.2d 1391 (Okla.1973), unless the operator was acting outside the scope of its authority, which ARCO has not alleged or shown. *See, e.g., Haco Drilling Co. v. Burchette*, 364 P.2d 674 (Okla.1961). *See generally Restatement (Second) of Agency* §§ 1 & 212 (1957).

■ In its reply brief, Defendant asserts that it is not, as a working interest owner, responsible for Mobil's operation of the Healdton One Unit because its voting interest was only approximately eleven percent, Mobil's was over sixty percent and the unit agreement requires a vote of at least three lessees with a combined voting interest of at least seventy-five percent for an operating committee decision concerning operations and a ninety percent vote to remove Mobil as operator. These facts demonstrate that while no unit decisions could be made without Mobil's agreement, neither Mobil nor any other single unit owner could

---

1. ARCO owned an oil and gas lease covering the SW/4 NW/4 & N/2 SW/4 & W/2 SE/4 NW/4 of Section 31–3S–3W, Carter County, Oklahoma, from 1917 to January 5, 1990, according to Mr. Smith's affidavit. It also owns an oil and gas lease covering the NW/4 SW/4 SW/4 of Section 31–3S–3W, Carter County, Oklahoma, and S/2 SE/4 SE/4 & SW/4 SE/4 of Section 36–3S–4W, Jefferson County, Oklahoma, according to Plaintiffs' petroleum landman, who conducted land records examinations. The latter lease has been owned by ARCO or its predecessor since 1963 and, while it was assigned to the Citation 1989 Investment Limited Partnership on January 5, 1990, the Bureau of Indian Affairs has not approved this assignment.

alone control operating committee decisions and do not establish as a matter of law that ARCO was not legally responsible for pollution occurring within the unit allegedly as a result of Mobil's operations.

■ The Court is not now persuaded that Section 287.8 of Title 52 of the Oklahoma Statutes precludes ARCO's legal liability for unit operations, as Defendant also argues in its reply brief. That section provides that liability for payment of unit expenses shall be several and not joint or collective and that it no event is the lessee or other owner of oil and gas rights in a separately-owned tract to be chargeable with more than the amount of unit expense apportioned or charged to his interest in such tract under the unitization plan. Okla.Stat. tit. 52, § 287.8. "Unit expense" as defined in Section 287.13(e)

> include and mean any and all cost, expense, or indebtedness incurred by the unit in the establishment of its organization, or incurred in the conduct and management of its affairs or the operations carried on by it. Okla.Stat. tit. 52, § 287.13(e).

This definition is arguably broad enough to encompass costs or indebtedness in the form of legal liability for pollution caused by operations carried on by the unit. However, the fact that a unit participant may only be charged with his proportionate share of such "unit expense," if indeed liability for pollution from unit operations is a "unit expense," does not preclude Plaintiffs from pursuing Defendant ARCO for its proportionate share of such "unit expense," for which it may be jointly or derivatively liable in relation to the operator. Section 287.8 does not speak to whether the separate or several obligations of lessees or unit owners may be joint or derivative to the extent of their interests with the obligations or liability of an operator or other person or entity acting as the lessees' or unit owners' agent.[2]

■ Furthermore, it is alleged in Plaintiffs' Third Amended Complaint that "ARCO conducted primary and secondary oil recovery operations in the geographic area of the oilfield prior to the unitization of the Healdton One Unit," Third Amended Complaint at ¶ 9, and that "[t]he nuisance complained of was created by both primary and secondary oil recovery operations...." Id. at ¶ 8. It is also alleged that Defendants allowed tank batteries, lines and wells to be operated, maintained and plugged in such a way as to cause severe pollution to the surface and subsurface soil and water," id. at ¶ 10; that Defendants have also polluted by not having adequate tubing, casing and cement in active and inactive wells so as to prevent deleterious substances from migrating," id. at ¶ 12; and that "ARCO [and others] polluted by illegally operating unlined salt-water and waste pits in the oilfield and by failing to remove deleterious substances in such pits when they were closed by the Defendants." Id. at ¶ 14.

Defendant ARCO, as a working interest owner, is jointly and severally liable and responsible with the operator for the proper plugging of any oil, gas disposal or injection wells. O.C.C. Rule 3–401B. Moreover, Plaintiff has submitted evidence that between 1915 and 1968, Defendant ARCO drilled, operated and in some cases plugged wells, and operated salt-water evaporation pits and tank batteries in and around the geographic area now known as the Healdton One Unit. See Affidavit of Gerald Wallaston (Exhibit "10" to Plaintiffs' Brief) at ¶¶ 7 & 8. Plaintiffs have proffered expert testimony that many of the wells, pits and tank batteries operated by ARCO, pre–1968, "continue to be sources of pollution to Cottonwood Creek and the Branch property today," id. at ¶ 7; see also id. at ¶ 9, and "that it is likely that contamination released prior to 1968 has only begun to reach the Branch property recently" inasmuch as much of the problem is due to contamination of underground water, which moves very slowly. Affidavit of Dr. Robert Knox (Exhibit "13" to Plaintiffs' Brief) at ¶ 2. This evidence is sufficient to create a genuine issue of fact as to

---

2. This interpretation of Section 287.8 arguably renders it unnecessary to consider the issue of

whether O.C.C. Rule 3–401B is inconsistent with Section 287.8.

whether Defendant ARCO participated in the creation or maintenance of a nuisance which caused injury to the Plaintiffs. *See* Okla.Stat. tit. 50, §§ 1 and 5; *Schlirf v. Loosen,* 232 P.2d at 929–30; *Duncan v. Flagler,* 132 P.2d at 940. *See generally* 58 Am.Jur.2d *Nuisances* § 116 & §§ 117–134.

Defendant ARCO also contends that abatement is not available because it can't be ordered to abate the property or operation of another. As indicated above, a material factual issue exists as to Defendant ARCO's ownership of an oil and gas lease and interest in the Unit, which carries with it an attendant right to go upon the property or direct the operator to do so.

Defendant ARCO also argues that Plaintiffs have no claim against it for temporary damages. In making this argument, Defendant ARCO actually makes numerous circuitous arguments which can be summarized as follows:

1. Plaintiffs are judicially estopped to allege or assert that any temporary damages resulted from primary or pre-unit recovery operations by ARCO because their experts previously attested that Plaintiffs' damages resulted from secondary recovery operations of the Healdton One Unit.

2. Plaintiffs' claim for ARCO's pre-unit operations is barred by the two-year statute of limitations, Okla.Stat. tit. 12, § 95 (Third).

3. Plaintiffs may not rely on a continuing or public nuisance theory to avoid the statute of limitations because Plaintiffs have not alleged a nuisance which affects "an entire community or neighborhood, or any considerable number of persons," Okla.Stat. tit. 50, § 2, and Plaintiffs cannot utilize Okla.Stat. tit. 82, § 926.4, a provision of the Oklahoma Water Pollution Control Act, to show the "public" character of the nuisance of which they complain, that is, to satisfy the requirement that the nuisance affect an entire community or large number of people. Defendant ARCO argues that to apply the Water Pollution Control Act as argued by Plaintiffs would be "unconstitutional since it would create a special statute of limitations for one type

of injury resulting from the same tortious act."

4. Section 7 of Title 50 of the Oklahoma Statutes permits an action only to abate continuance of a public nuisance; it does not permit the recovery of private monetary relief.

5. "Any claim for damages arising from the existence of a nuisance can be recovered only against those who have operated the nuisance within two years prior to the commencement of Plaintiffs' action. No such claim exists against ARCO." Defendant ARCO's Brief at pp. 13–14.

■ The Tenth Circuit has not adopted judicial estoppel. *See Chrysler Credit Corp. v. Country Chrysler, Inc.,* 928 F.2d 1509, 1521 n. 10 (10th Cir.1991); *United States v. 49.01 Acres of Land,* 802 F.2d 387, 390 (10th Cir.1986). But even if it had or were to do so, that doctrine would not preclude Plaintiffs' claim against ARCO. Plaintiffs' prior pleadings and experts' affidavits alleging and attesting that secondary recovery operations of the Unit by Mobil and Citation caused the damage to Plaintiffs' property are not inconsistent with allegations and evidence, submitted by Plaintiffs, that Defendant ARCO's primary and secondary recovery operations in the geographic area of the oilfield prior to unitization caused pollution of Plaintiffs' property inasmuch as there may be more than one cause or contributing cause of injury and several persons' or entities' actions may combine to create a nuisance.

■ In response to Defendant ARCO's limitations argument, Plaintiffs make four arguments. First, they argue that the statute of limitations does not run against a continuing, temporary public nuisance as is alleged herein, citing *Haenchen v. Sand Products Co.,* 626 P.2d 332, 334 (Okla.App.1981). Secondly, Plaintiffs argue that the continuing nature of a temporary nuisance tolls the statute of limitations, citing Order, *Fischer v. Atlantic Richfield Co.,* 774 F.Supp. 616 (W.D.Okla.1989) and *Miller v. Cudahy Co.,* 592 F.Supp. 976, 984 (D.Kan.1984), *aff'd,* 858 F.2d 1449 (10th Cir.1988). Thirdly, and seemingly inconsistently, Plaintiffs cite

*Sheridan Oil Co. v. Wall,* 187 Okla. 398, 103 P.2d 507 (Okla.1940) for the proposition that a new action for temporary damages can be brought every two years. Fourthly, Plaintiffs in effect argue that the cause and fact of injury do not necessarily temporally coincide and that a cause of action does not accrue until the forces wrongfully put in motion produce injury, *citing New York Telephone Co. v. Mobil Oil Corp.,* 99 A.D.2d 185, 473 N.Y.S.2d 172, 174 (App. 1984). Plaintiffs have submitted evidence in the form of an expert's affidavit, that it is "likely that contamination released prior to 1968 has only begun to reach the Branch property recently," Affidavit of Dr. Robert Knox (Exhibit "13" to Plaintiffs' Brief) at ¶ 2, from which it can be inferred that Plaintiffs did not suffer any injury as a result of ARCO's pre–1968 operations and thus that their claim against ARCO did not accrue until recently.

Plaintiffs are correct that a cause of action does not accrue until a plaintiff has suffered injury as a result of the defendant's conduct. *See Harper–Turner Oil Co. v. Bridge,* 311 P.2d 947, 949 (Okla.1957) (permanent damage); *Elk City v. Rice,* 286 P.2d 275, 278–79 (Okla.1955) (temporary damage). Plaintiffs have submitted evidence showing that a genuine factual issue exists as to when Plaintiffs' cause of action accrued. Moreover, Plaintiffs have alleged and submitted evidence of a continuing abatable nuisance, which gives rise over and over to causes of action for damages sustained with the limitations period immediately prior to suit. *See Haenchen v. Sand Products Co.,* 626 P.2d 332, 334 (Okla.App.1981); *Miller v. Cudahy Co.,* 592 F.Supp. 976, 1005 (D.Kan.1984), *aff'd* 858 F.2d 1449 (10th Cir.1988) (continuing abatable private nuisance). Thus, at a minimum Plaintiffs may be able to recover damages from Defendant ARCO for the two years immediately preceding the filing of their Third Amended Complaint. *See* Okla.Stat. tit. 12, § 95 (Third). However, the Court agrees with Defendant ARCO that Section 7 of Title 50 does not suspend the operation of the statute of limitations on a claim for damages caused by a public nuisance which obstructs a public right for as long as the nuisance exists. It merely allows abatement or a civil action therefor as long as the nuisance exists. *See Ruminer v. Quantty,* 198 Okla. 395, 179 P.2d 164, 166 (1947); *Revard v. Hunt,* 29 Okla. 835, 119 P. 589, 592 (1911). Thus, Plaintiffs' claims against Defendant ARCO for temporary damages resulting from the alleged public nuisance which occurred prior to May 20, 1989 are barred by Okla.Stat. tit. 12, § 95 (Third). *See Haenchen v. Sand Products Co.,* 626 P.2d at 334.

The Court has already concluded that it could not say that Plaintiffs could prove no set of facts supporting their claim under Okla.Stat. tit. 50, §§ 1, 2 and 10 entitling them to relief. Defendant ARCO has not convinced the Court that Plaintiffs can prove no set of facts supporting their claim under those statutes entitling them to relief without regard to any reliance on Okla. Stat. tit. 82, § 926.8 to show the "public" character of the alleged nuisance.

Defendant ARCO's final argument has already been disposed of. Plaintiffs have submitted evidence from which a jury could find that Defendant ARCO participated in creation and/or maintenance of a nuisance or is liable as the principal of another party who has created and/or maintained a nuisance. *See Tenneco Oil Co. v. Allen,* 515 P.2d 1391; *Duncan v. Flagler,* 132 P.2d 939, 940–41; *Oklahoma City v. Tyetenicz,* 175 Okla. 228, 52 P.2d 849, 853 (1935).

■ In its reply brief Defendant ARCO argues for the first time that Plaintiffs' public nuisance claim, to the extent it is predicated on wells drilled and plugged and salt-water pits and other structures created before 1968, is barred by Okla.Stat. tit. 12, § 109. That statute bars all tort claims to recover damages for injuries to property and persons arising out of "any deficiency in the design, planning, supervision or observation of construction or construction of an improvement to real property" ten (10) years "after substantial completion of such an improvement."

■ In order for Section 109 to apply, the damages must arise from a deficiency in construction or observation of construction of an improvement to real property.

Merely because oil wells, salt pits, and other structures related to oil well operation such as tank batteries, whether operational or not, are constructed on real property does not transform them into "improvements to real property." *See Smith v. Westinghouse Electric Corp.*, 732 P.2d 466, (Okla.1987), citing *Turner v. Marable–Pirkle, Inc.*, 238 Ga. 517, 233 S.E.2d 773 (1977). In Oklahoma, the question of whether structures, particularly those constructed on the real estate of others, are "improvements to real property" turns on who owns the structures and ad valorem tax treatment. *See Smith v. Westinghouse Corp.*, 732 P.2d at 468–70. *See also Riley v. Brown & Root, Inc.*, 896 F.2d 474, 477 (10th Cir.1990). There is insufficient factual information before the Court to determine ownership of the structures in question.[3] Thus, genuine issues of material fact exist concerning ownership of the structures and whether the same may be considered "improvements to real property" within the meaning of Section 109. Furthermore, the parties have failed to address the issue of the ad valorem or other tax treatment of the structures in question.

Moreover, the Court questions the applicability of Okla.Stat. tit. 12, § 109, even if the structures in question are determined to be "improvements to real property" inasmuch as heretofore Oklahoma courts have always applied the two-year statute of limitations found in Okla.Stat. tit. 12, § 95 (Third) to claims for temporary damages from an abatable but continuing nuisance, *see City of Bethany v. Municipal Securities Co.*, 274 P.2d 363, 367 (Okla.1953); *Town of Braggs v. Slape*, 207 Okla. 420, 250 P.2d 214 (1952); *City of Bethany v. Twin Lakes Gun Club*, 205 Okla. 154, 236 P.2d 255, 256–57 (1951); *Big Four Foundry Co. v. Hagens*, 197 Okla. 409, 172 P.2d 322 (1946); *Haenchen v. Sand Products Co.*, 626 P.2d 332, 334 (Okla.App.1981); *cf. Nichols v. Burk Royalty Co.*, 576 P.2d 317 (Okla.App.1977) (two-year statute of limitations applied to claim for permanent damages to land from escaping oil well substances), and it appears that Okla.Stat. tit.

12, § 109, which has never been asserted in a case involving damages from alleged pollution from oilfield structures alleged to constitute a public nuisance, was intended to apply to architects, engineers and contractors in the construction industry and not to oilfield operators and structures employed in oil and gas operations which are alleged to amount to a public nuisance. *See* John F. Percival, Comment, *Oklahoma's Statute Limiting Actions Against Designers and Builders of Improvements to Real Property*, 27 Okla.L.Rev. 723 (1974); Timothy L. Olsen, *Oklahoma's Statute of Repose Limiting the Liability of Architects and Engineers for Negligence: A Potential Nightmare*, 22 Tulsa L.J. 85 (1986). *See also St. Paul Fire & Marine Insurance Co. v. Getty Oil Co.*, 782 P.2d 915 (Okla.1989); *Loyal Order of Moose, Lodge 1785 v. Cavaness*, 563 P.2d 143 (Okla.1977).

The alternative motions of Atlantic Richfield Company for dismissal or summary judgment are denied except that as to Plaintiffs' claim against said Defendant for temporary damages occurring prior to May 20, 1989, Defendant's motion for summary judgment is granted.

IT IS SO ORDERED.

---

**3.** Indeed, there is insufficient factual information before the Court to determine precisely

what the alleged structures are.