TEXACO INC., a Delaware Corporation, d/b/a Texaco, U.S.A., Plaintiff,

v.

BERRY PETROLEUM CORPORATION, an Oklahoma Corporation; Jack S. Henley, as Trustee for Berry Petroleum Corporation; Ward Petroleum Corporation; BPC Creditors Trust; Jack S. Henley, as Trustee for BPC Creditors Trust; Berry 1981–II Private Drilling Program, an Oklahoma Limited Partnership; Berry 1981–III Drilling Program, an Oklahoma Limited Partnership; Ward Petroleum Corporation, f/k/a L.O. Ward Oil Company; L.O. Ward; Grace Petroleum Corpo-

ration, a Delaware Corporation; Meridian Oil Production Inc., a Delaware corporation, f/k/a El Paso Exploration Company; El Paso Natural Gas Company, a Delaware corporation; Mustang Fuel Corp. of Oklahoma, a Delaware corporation; Geodyne Nominee Corporation, a Delaware corporation, successor in interest to Pioneer Production Corporation; Astro Communications, Inc., an Oklahoma corporation, f/k/a Astro Drilling Company successor in interest to Astro 1981 Drilling Program, Ltd.; Eagle Petroleum Corporation, an Oklahoma corporation; Settlers Energy Corporation, an Oklahoma corporation; Robert A. Hefner III, an individual; David Christofferson, an individual; Don Millican, an individual; and Alan Chatfield, an individual, Defendants.

**GEODYNE NOMINEE CORPORATION,**
**Third–Party Plaintiff,**

v.

**MESA OPERATING LIMITED PARTNERSHIP COMPANY; Mesa Midcontinent Limited Partnership; Mesa Services Limited Partnership; Pickens Operating Company; Diverse GP II; Hef–Lin Energy Corporation, Third–Party Defendants.**

No. CIV–93–1201–A.

United States District Court,
W.D. Oklahoma.

Dec. 5, 1994.

James R. Waldo, Rob F. Robertson, Mock Schwabe Waldo Elder Reeves & Bryant, Oklahoma City, OK, for plaintiff Texaco Inc., a Delaware Corp. dba Texaco USA.

Gerald E. Durbin, II, Michael L. Darrah, Rodney D. Stewart, Durbin Larimore & Bialick, Oklahoma City, OK, for defendants Berry Petroleum Corp., Berry 1981–II Private Drilling Program, Berry 1981–III Drilling Program.

Lynn A. Pringle, Pringle & Pringle, C. William Threlkeld, Fenton Fenton Smith Reneau & Moon, Michael E. Smith, Barnes Smith & Lewis, Oklahoma City, OK, for defendants Ward Petroleum Corp. fka L.O. Ward Oil Co., L.O. Ward.

Larry D. Ottaway, Michael C. Felty, Foliart Huff Ottaway & Caldwell, Oklahoma City, OK, for defendant BPC Creditors Trust.

Larry D. Ottaway, Michael C. Felty, Foliart Huff Ottaway & Caldwell, Gerald E. Durbin, II, Durbin Larimore & Bialick, Oklahoma City, OK, for defendant Jack S. Henley, as trustee of the BPC Creditors Trust.

George D. Davis, N. Martin Stringer, McKinney Stringer & Webster, Oklahoma City, OK, for defendant Grace Petroleum Corp.

James J. Sykora, McKenzie Moffett & Sykora, Clifford A. Wright, Clifford A. Wright, PC, Oklahoma City, OK, for defendants Meridian Oil Production Inc. fka El Paso Exploration Co., El Paso Natural Gas Co.

David O. Cordell, Drew Neville, Jr., Deborah A. Wolfe, Linn & Neville, Elisabeth M. Ellis, Oklahoma City, OK, for defendant Mustang Fuel Corp., of Okl.

George D. Davis, McKinney Stringer & Webster, Oklahoma City, OK, Rand Phipps, Jack A. Canon, Michael G. Daniel, Tulsa, OK, for defendant Geodyne Nominee Corp.

George D. Davis, John S. Gardner, McKinney Stringer & Webster, Oklahoma City, OK, for defendant Astro Communications Inc. fka Astro Drilling Co.

Roger D. Graham, Hartzog Conger Cason & Hargis, Oklahoma City, OK, for defendant Eagle Petroleum Corp.

Arthur W. Schmidt, Mahaffey & Gore, Oklahoma City, OK, for defendant Robert A. Hefner, III.

David B. Christofferson, pro se.

George D. Davis, N. Martin Stringer, John S. Gardner, McKinney Stringer & Webster, Oklahoma City, OK, for defendant Samson Inv. Co., successor to Grace Petroleum Corp.

Lynn A. Pringle, Pringle & Pringle, C. William Threlkeld, Fenton Fenton Smith Reneau & Moon, Oklahoma City, OK, for defendant L.O. Ward Oil Co.

Frank H. McGregor, III, William K. Elias, Michael J. Massad, McKenzie Moffett & Sykora, Oklahoma City, OK, for third-party defendants Mesa Operating Ltd. Partnership Co., Mesa Midcontinent Ltd. Partnership, Mesa Services Ltd. Partnership, Pickens Operating Co.

Larry G. Ball, Robert G. Gum, G. Patrick O'Hara, Mark R. McPhail, Spradling Alpern Friot Gum & Scoggins, Oklahoma City, OK, Donald J. Camp, Austin TX, for third-party defendant Diverse GP II.

Timothy L. Martin, Looney Nichols Johnson & Hayes, Oklahoma City, OK, for third-party defendant Hef–Lin Energy Corp.

Larry D. Ottaway, Michael C. Felty, Foliart Huff Ottaway & Caldwell, Gerald E. Durbin, II, Durbin, Larimore & Bialick, Oklahoma City, OK, for defendant Jack S.

Henley, as trustee for Berry Petroleum Corp.

### ORDER

ALLEY, District Judge.

This matter comes before the Court on the Motion for Summary Judgment filed by defendants, Meridian Oil Production Inc.[1] ("Meridian") and El Paso Natural Gas Company ("El Paso") (collectively "defendants"), pursuant to Fed.R.Civ.P. 56. Defendant Robert A. Hefner adopts the position asserted by Meridian and El Paso and seeks summary judgment as well. Defendant Geodyne Nominee Corporation and third-party defendants, Hef-lin Energy Corporation and Diverse GP II, each filed a Response in support of defendants' motion. Plaintiff Texaco opposes summary judgment. The Court, for the reasons stated herein, grants in part and denies in part defendants' motion.

### FACTS

This case arises out of the drilling and plugging of a gas well on the property located at Section 4, Township 12N, Range 19W, Custer County, Oklahoma. The well, known as the Armstrong Well, was drilled pursuant to a Joint Operating Agreement ("the Operating Agreement") executed by numerous parties, including Texaco, Meridian and El Paso. Each of the above parties signed the Operating Agreement as a non-operator and each modified the agreement by letter. Under the Operating Agreement, Berry Petroleum Corporation ("Berry Petroleum") was to serve as the well's Operator.

Meridian and El Paso agreed to the terms of the Operating Agreement upon Berry Petroleum's acceptance of terms contained in a letter agreement of September 1, 1981. Texaco's consent to the agreement was reliant upon Berry Petroleum's acceptance of the terms contained in letters of September 22, 1981 and November 20, 1981. Although Texaco, Meridian and El Paso agree that the Operating Agreement is the controlling document, the parties are unable to concur as to which letter agreements are incorporated into the Operating Agreement.

In June, 1981, Berry Petroleum commenced operations on the Armstrong Well. On November 20, 1981, Texaco purchased a portion of Berry Petroleum's shares in the Armstrong Well. This purchase represented Texaco's initial interest in the Armstrong well. Texaco's subsequent acquisitions resulted from the absorption of the shares of non-consenting parties pursuant to the terms of the Operating Agreement. Texaco's original procurement required assent to the Operating Agreement and Texaco became bound by the terms of the September 1, 1981 letter agreement between Berry and defendants.

Defendants allege, and Texaco disagrees, that Texaco's purchase from Berry included Meridian and El Paso's entire working interest in the Morrow–Springer formation. Texaco asserts that Meridian and El Paso retained a twenty-five percent leasehold interest in the Morrow–Springer formation and working interests in the formations above Morrow–Springer, including Atoka. When Texaco purchased its interest from Berry, Texaco was aware that the Armstrong Well had been drilled through the Atoka formation, a depth of 14,929 feet. Berry's operations were completed to the Morrow–Springer formation in August, 1982. The parties disagree as to whether the well ever produced gas, the defendants asserting that production began on September 13, 1992, as noted on a report by the Oklahoma Corporation Commission. Defendants agree that the Morrow–Springer formation and the Atoka formation were capable of gas production, although the Armstrong Well never sold hydrocarbons commercially. The Morrow–Springer formation was the only completed portion of the Armstrong Well, although other formations were penetrated. Texaco participated in the Springer formation under the terms of the Operating Agreement, owning approximately 43.70536 percent. Meridian and El Paso chose not to participate in the Morrow–Springer formation and became

1. Meridian is the successor in interest to El Paso Exploration Company. For the purpose of clari-   ty, all references shall be to Meridian.

non-consenting parties under the Operating Agreement.

Defendants assert that by choosing not to participate in the Morrow–Springer formation that their entire working interest in the Armstrong Well was relinquished to the consenting parties, including Texaco. Defendants assert that their sole interest in the Springer formation is an overriding royalty interest. Texaco denies that defendants relinquished their total working interest in the Armstrong Well, asserting that defendants retained their leasehold interests as well.

In April, 1983, Berry Petroleum, the Operator, filed a bankruptcy petition in United States Bankruptcy Court for the Western District of Oklahoma. On September 9, 1986, Jack S. Henley, Berry Petroleum's Chapter 11 Trustee, rejected the Operating Agreement for the Armstrong Well. On November 24, 1986, the Bankruptcy Court entered an order authorizing Berry Petroleum to abandon its interest and role in the Armstrong Well. The Armstrong Well was left without an operator from the time of Berry Petroleum's resignation until abandonment.

Subsequent to Berry Petroleum's resignation, the Oklahoma Corporation Commission sought to force Texaco and defendant Ward Petroleum to plug the Armstrong Well. The landowners, Laverne Armstrong and Ray Pollet, complained of ground water contamination due to pollutants emanating from the well. Although the Oklahoma Corporation Commission never issued an order requiring Texaco to plug the Armstrong Well, the Commission did announce its intention to take legal action against Texaco and the other working interest owners.

Texaco and the defendants disagree as to when Texaco became aware of the potential pollution problems at the Armstrong Well and about Berry Petroleum's bankruptcy. The hydrocarbon pollution and pit reserve pollution created by the Armstrong Well were minimized by Texaco's plugging of the well. Texaco seeks contribution for plugging the well, implementing site remediation and settlement of an action filed by Laverne Armstrong and Ray Pollet. Defendants assert that Texaco cannot establish when the pollution occurred and that their interests were relinquished entirely to Texaco. Defendants additionally assert that Texaco cannot recoup more than $20,000 in damages under the Operating Agreement and that because Texaco breached the Operating Agreement, by failing to give notice of the Armstrong and Pollet claims, that no losses should be compensated. Defendants assert that Texaco was bound by the Operating Agreement provisions for settlement and expenses because Texaco assumed the role of operator. Texaco argues that they never became the operator of the well, but merely fulfilled the legal duties of the working interest owners under Oklahoma nuisance law and therefore are entitled to contribution.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if the pleadings and affidavits show that there is no genuine issue as to any material fact. and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). "[A] motion for summary judgment should be granted only when the moving party has established the absence of any genuine issue as to a material fact." *Mustang Fuel Corp. v. Youngstown Sheet & Tube Co.*, 561 F.2d 202, 204 (10th Cir.1977). Any doubt as to the existence of a genuine issue of material fact must be resolved against the party seeking summary judgment. *Board of Educ. v. Pico*, 457 U.S. 853, 863, 102 S.Ct. 2799, 2806, 73 L.Ed.2d 435 (1982). In addition, the inferences drawn from the facts presented must be construed in the light most favorable to the nonmoving party. Nonetheless, a party opposing a motion for summary judgment may not simply allege that there are disputed issues of fact; rather, the party "must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986) (citations omitted). The moving party is entitled to judgment as a matter of

law when the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

## DECISION

■ Defendant's first argument concerns the validity and effect of the Operating Agreement signed by Texaco, Meridian and El Paso. Although the parties concur that the Operating Agreement and the September 1, 1981 letter agreement are valid, defendants do not consider the effect, if any, of the letters between Texaco and Berry Petroleum of September 22, 1981 and November 30, 1981. Texaco argues, and the Court agrees, that the terms contained in the letters of September 22, 1981 and November 30, 1981, are incorporated into Texaco's obligation under the Operating Agreement; however, the Court finds that the terms contained within those letters do not affect the current controversy beyond the Court's obligation to consider the whole contract in interpreting individual provisions.

Defendants additionally assert that the Court must interpret the Operating Agreement to find that defendants relinquished their rights to the Morrow–Springer formation and therefore cannot be liable for the pollution of the Armstrong–Pollet land or the plugging of the Armstrong Well. Defendants argue that the terms of the Operating Agreement and letter agreements are not ambiguous and therefore must be enforced as written.

■ Whether the provisions of a contract are ambiguous is a question of law for the Court to decide. *Mercury Inv. Co. v. F.W. Woolworth Co.,* 706 P.2d 523, 529 (Okla.1985). Upon a finding that the terms of a contract are unambiguous, interpretation of the contract is a task for the court. *Corbett v. Combined Communication Corp.,* 654 P.2d 616, 617 (Okla.1982). Defendants argue, and plaintiff does not disagree, that the terms of the Operating Agreement are unambiguous. Furthermore, the Court finds that the terms of the agreement, including the letter agree-

ment of September 1, 1981, are unambiguous. The Court must next consider the effect of the Operating Agreement, given the undisputed facts of the case.

Defendants contend that because they own nothing more than overriding royalty interests in the Morrow–Springer formation, that they are not liable for any pollution originating from the Armstrong Well. Defendants first argue that as non-consenting parties to the Morrow–Springer formation that Texaco, a consenting party, cannot seek recovery against them. Under Article VI.B2 of the Operating Agreement, "[t]he entire cost and risk of conducting such operations [with less than total participation] shall be borne by the consenting parties in the proportions they have elected to bear." Defendants assert that this provision shields non-consenting parties from any liability arising out of the Morrow-Springer formation. Texaco challenges defendants' argument, presenting a theory that defendants retained an interest in the Morrow–Springer formation sufficient to impose liability for the pollution damage to the Armstrong–Pollet land.

■ Plaintiff argues that defendants' failure to divest their total interest provides sufficient ties to the Armstrong Well to hold defendants liable for the pollution and plugging. Plaintiff argues that as owners of an interest, defendants are liable for the abatement of any nuisance created by the Armstrong Well. Texaco correctly argues that pollution emanating from a gas well is a nuisance. *Briscoe v. Harper Oil Co.,* 702 P.2d 33, 36 (Okla.1985). Plaintiff also properly asserts that under Oklahoma law all those who participate in a nuisance may be liable for the resulting damages. *Duncan v. Flagler,* 192 Okla. 18, 132 P.2d 939, 940 (1942). Although the Court agrees with plaintiff's statement of the law, the Court disagrees with plaintiff regarding defendants' liability under the facts of this case.

■ There is "[n]ot an abundance of authority for determining what interest non-consenting working interest holders own." *Railroad Comm'n v. Olin Corp.,* 690 S.W.2d 628 (Tex.App. 3 Dist.1985). Although the lack of authority was noted by the court in

*Olin*, the court proceeded to interpret a contractual provision almost identical to provision VI.B2.[2] When a party to an operating agreement elects to go non-consent, their interest is called a carried interest, and the non-consenting party a carried party. Howard Williams and Charles Meyers, *Oil and Gas Law, Manual of Terms* 778 (1991). A carried interest is

> a fractional interest in ... gas property, usually a lease, the holder of which has no personal obligation for operating costs, which are to be paid by the owner or owners of the remaining fraction, who reimburse themselves therefor out of production, if any.

*Id.* at 148. Defendants' option to non-consent rendered them a carried party. The question remains as to what type of ownership interest a carried party retains.

■ The Court finds that under the provisions of the Operating Agreement, defendants retained a "Manahan-type" carried interest.

> In a Manahan type carried interest, the carried party has a future interest in a portion of the working interest which is so limited as to become possessory after the carrying party has recovered certain specified costs during the payout period ... the carried party retains a reversionary interest in part of the working interest, which reversion occurs when the carrying party has recovered the specified costs during the payout period.

*Olin*, 690 S.W.2d at 630 (quoting Williams and Meyers § 424.1). Although defendants opted to go non-consent, this election did not divest defendants of their entire interest in the Morrow–Springer formation. Total relinquishment of defendants interests occurred at a later time.

■ The completion of the Morrow–Springer formation marks an important juncture in this case, as the nature of defendants' interest was altered upon completion of the well. Defendants' liability for the costs of pollution and plugging hinges on whether the farming out provision of the September 22, 1981 letter agreement was triggered. The letter agreement amended the Operating Agreement to include the following provision:

> [i]f the well is completed in one or more of the common sources of supply below the base of the Atoka to the total depth of the well, it is agreed that Berry Petroleum Corporation will have acquired the working interest of El Paso in the well only as to the one or more common sources of supply below the base of the Atoka in which the well is completed as a producing well.

Although the parties disagree as to whether the Armstrong Well was ever a producing well, Texaco argues only that production capability is immaterial, without offering evidence to contradict the Corporation Commission report submitted by defendants, that notes September 13, 1982 as the first date of production.[3] As such, the Court shall consider the fact that the well was a producing well confessed pursuant to Fed.R.Civ.P. 56(e) and Local Rule 14(B). The farming out provision of the September 1, 1981 letter agreement was therefore triggered. Once the well was completed, Berry Petroleum acquired defendants' interest below the base of the Atoka, including any reversion created by defendant's carried interest.[4] In *Olin*, the rever-

---

2. In *Olin*, the Court was given the task of interpreting the following provision.

   > Upon commencement of operations for drilling, reworking, deepening, or plugging back of any well by Consenting Parties in accordance with the provisions of this Article, each Non-Consenting Party shall be deemed to have relinquished to Consenting Parties, and the Consenting Parties shall own and be entitled to receive, in proportion to their respective interests, all of such Non-Consenting Parties' interest in the well and share of production therefrom until ...

   The same language is contained in the Operating Agreement at VI.B2.

3. Texaco offers the affidavit of Sally King in support of its assertion that defendants own leasehold interests in the entire Armstrong well. Defendants admit to owning of lease 1A and lease 7A, however, the Court finds that the Operating Agreement, specifically the provisions in the September 22, 1981 letter agreements, altered defendants' interest by farming out their working interests in exchange for an overriding royalty interest.

4. The parties apparently agree that defendants relinquished their working interests in the Morrow–Springer formation of the Armstrong Well. Texaco argues that defendants maintained a 25%

sionary interest holders did not relinquish their entire interest upon the occurrence of a specific event. Without the farming out provision, or if the provision had not been triggered, the Court would question whether defendant's reversionary interest was sufficient to impose liability. The Court finds, however, that defendants relinquished their entire interest, including any reversion.

Having established that defendants maintained no working interest in the Morrow–Springer formation after its completion, defendants would urge the Court to grant summary judgment. Summary judgment is nonetheless inappropriate. Defendants ignore the possibility that the pollution for which Texaco seeks contribution resulted from activities above the Morrow–Springer formation, where defendants retained their working interests. Although the Armstrong Well was completed only as to the Morrow–Springer formation, defendants admit that other formations were penetrated. Defendants present no evidence that the Morrow–Springer formation was the only potential source of pollution and that the Morrow–Springer formation perpetuated the need to plug the well. Texaco presents the affidavit of Steven Matthews in support of its argument that the Morrow–Springer formation was not the source of pollution. Defendants, although not liable for damage stemming from the Morrow–Springer formation, are liable for pollution resulting from the Atoka formation.· Because there are material issues of fact as to the source of the pollution, summary judgment is inappropriate.

In determining whether the reversion is sufficient to hold defendants liable, the Court finds that there are genuine issues of material fact as to whether defendants assisted in the creation or maintenance of a nuisance. Although plaintiff presents no evidence that defendants in any way assisted in the creation of pollution emanating from the Morrow–Springer formation, Texaco presents evidence that Morrow–Springer was not the

source of pollution. Because the operating agreement specifically and unambiguously states that consenting parties were to bear one hundred percent of the risk associated with well operations, defendants are not responsible for damages emanating where they held no interest. Furthermore, Appendix A to the Operating Agreement clearly indicates that below the Atoka formation defendants owned no interest in the well. Texaco argues that

> to the extent that the operator of the unit created or maintained a nuisance during the time that the El Paso entities [defendants] were working interest owners in the Well, the El Paso entities are liable as principles for the operator-agent's actions unless the operator was acting outside the scope of its authority, which has not been alleged or shown.

Response to Motion for Summary Judgment at 24 (quoting *Branch v. Mobil Oil Corp.,* 788 F.Supp. 531, 533 (W.D.Okla.1991)). Texaco, however, presents no evidence that pollution occurred while defendants were working interest owners in the Morrow–Springer formation. Absent such evidence, a necessity for holding defendants liable, the Court finds summary judgment appropriate as to the formations below Atoka. The Court's granting of summary judgment is limited to the issue of liability for pollution emanating from formations where defendants were non-consenting parties, specifically the Morrow–Springer formation. As to formations above the Morrow–Springer, defendants present no evidence that they relinquished their ownership interest and summary judgment is inappropriate.

■ The Court must next consider whether Oklahoma Corporation Commission regulation 165:10–11–3, similar to the statutory provisions at issue in *Olin,* imposes liability on defendants for the plugging of the Armstrong Well. 165:10–11–1 imposes joint and several liability on the "owners and operators of a well for plugging." If the rever-

---

leasehold interest in the Morrow–Springer formation. The terms "leasehold interest" and "working interest", however, are generally considered synonymous in oil and gas law. *Minex Resources Inv. v. Morland,* 467 N.W.2d 691, 697 (N.D.1991); *see also* Howard Williams and

Charles Meyers, *Oil and Gas Law Manual of Terms* at 646. Texaco does not persuade the Court that the situation here is different such that defendants retained more than an overriding royalty interest in the Morrow–Springer formation.

sionary interest retained by defendants is sufficient to make defendants "owners" under the Oklahoma Corporation Commission regulation, defendants may have been responsible for the cost of plugging the well and therefore liable to Texaco for contribution. For the same reason stated above, the Court finds that there are genuine issues of material fact as to the source of pollution.

If, as Texaco argues, the plugging of the well was predicated solely on pollution stemming from above the Morrow–Springer formation, defendants, as interest owners, would be liable for abatement of the nuisance. Because the source of the pollution is unknown, the Court finds that summary judgment is inappropriate. The Court notes, however, the Texaco's reliance on *Olin,* is misplaced. In *Olin,* the non-consenting owners' liability was based on their reversionary interest. The court held that the reversion was sufficient to render the parties "owners" under the Texas regulatory scheme. This Court has determined that defendants retained no reversion once the well was completed. The Armstrong Well was not plugged until after completion. By that time, defendants had relinquished their interests and were no longer owners of any interest below the Atoka.

■ Defendants additionally argue that because Texaco assumed the role of operator under the Operating Agreement that Texaco became bound by the provisions limiting liability and requiring the signatories' consent before settlement of any claims. Defendants do not present, and the Court can find, no authority to support the theory that Texaco, by virtue of its majority interest, automatically became the Operator. None of the cases cited by defendants presents a scenario similar to the facts in this case. The cases relied upon by defendants involve operators violating the terms of their agreements, not situations where the operator withdraws and

no action is taken to replace him. Although defendants present a draft letter from Texaco indicating the assumption of operator status, Texaco presents contradicting evidence that it intended to nominate any party who opposed well abandonment as Berry Petroleum's successor. The Operating Agreement provides for the replacement of an operator removed after filing bankruptcy.[5] The Operating Agreement, however, contains no provisions calling for the replacement of the operator absent action by the signatories. Because the Court is unwilling to find that Texaco became the well operator by default or that the Operating Agreement mandated that Texaco assume the role of operator, summary judgment is not available.

■ Finally, defendants argue that any liability arising under Oklahoma law or under the Operating Agreement is proportional, not joint and several. Texaco does not directly address the issue of whether the Operating Agreement determines the amount of liability falling upon defendants, if any. The Court finds, however, that Texaco's reliance upon 165:10–11–3 providing for joint and several liability in the plugging of wells is misplaced. Joint and several liability allows a plaintiff to recover damages and costs from one or more defendants. The defendant may then seek indemnity or contribution from joint tortfeasors against whom plaintiff did not recover. Okla.Stat. tit. 12 § 832(B). The provision of the Operating Agreement calling for liability based on the percentage of ownership is merely an alteration of the contribution scheme called for by Oklahoma statute. Parties are free to contract as they wish, and the Court will not attempt to rewrite the terms of the contract. Any recovery be Texaco shall be limited in accordance with the percentages listed in the Operating Agreement.

Having determined that the potential for holding defendants liable is limited, the

---

**5.** Article V.B2 of the Operating Agreement provides that:

Upon the resignation or removal of Operator, a successor Operator shall be selected by the parties. The successor Operator shall be selected from the parties owning an interest in the contract area at the time such successor Operator is selected. If the Operator that is removed fails to vote or votes only to succeed itself, the successor Operator shall be selected by the affirmative vote of two (2) or more parties owning a majority interest based on ownership as shown on Exhibit "A" and not on the number of parties remaining after excluding the voting interest of the Operator that was removed.

Court must turn to Robert Hefner's adoption of defendants' motion. The Court finds that summary judgment is inappropriate as to Mr. Hefner. Mr. Hefner presents no evidence that he relinquished his interests in the Armstrong well. Mr. Hefner's motion is based largely on the theory that Texaco assumed operator status and became bound by the terms of the Operating Agreement regarding procedures for the settlement of claims and plugging wells. As the Court has previously determined that Texaco, by virtue of its majority interest, was not cast into the role of Operator, the Court finds that summary judgment should be denied as to Mr. Hefner. As to whether Mr. Hefner is liable as an owner or as a party assisting in the creation of maintenance of a nuisance, the Court finds that there are genuine issues of material fact to be determined and summary judgment is therefore inappropriate.

### CONCLUSION

Although the issues presented by the parties are complex, basic questions of fact remains to prevent summary judgment. No proof has been offered that the damage complained of by Ms. Armstrong and Mr. Pollet, and for which Texaco settled claims, emanated solely from the Morrow–Springer formation. The Court finds that the defendants relinquished their working interests in the Armstrong Well only to the extent that the Morrow–Springer formation was involved. Additionally, the Court finds that defendants retained no reversionary interest in the Morrow–Springer formation after the completion of the well. The Court finds, however, that defendants retained a reversionary interest in the Morrow–Springer formation, prior to its completion, but that the interest is insufficient to render defendants liable for any pollution. No evidence has been presented that defendants contributed to the creation or maintenance of a nuisance in the form of pollution stemming from the Morrow–Springer formation.

The Court is unwilling to find that Texaco became the operator of the well and therefore bound by the limitations of the Operating Agreement. Evidence indicates that Texaco did not intend to assume operator status. Absent authority requiring Texaco to do so, the Court is unwilling to saddle Texaco with that burden. The Court finds, however, that any recovery by Texaco against defendants shall be limited according to the percentages listed in the Operating Agreement.

Accordingly, summary judgment is GRANTED IN PART and DENIED IN PART as to defendants. Summary judgment is DENIED as to defendant Hefner.

It is so ordered.