SHELL OIL CO., Inc., et al. v. VANDERSLICE.

No. 30595. March 23, 1943.

Rehearing Denied July 6, 1943.

*138 P. 2d 841.*

---

Streeter Speakman, of Sapulpa, and Alvin Richards, Victor C. Mieher, Booth Kellough, Geo. W. Cunningham, and Ralph J. May, all of Tulsa, and James P. Mize, of Centralia, Ill., for plaintiffs in error.

Geo. C. Crump and H. W. Carver, both of Wewoka, and R. E. Stephenson, of Sapulpa, for defendant in error.

BAYLESS, J. Thomas J. Vanderslice filed an action in the district court of Creek county against Shell Oil Company and a number of other companies and individuals to recover damages alleged to have been suffered by him as a result of the loss in value of his farm due to the destruction of pecan trees by reason of the pollution of two creeks running through his land. In the course of the proceedings, all of the defendants passed out of the action save Shell Oil Company, Amerada Petroleum Corporation, and Pure Oil Company. The verdict of the jury was for the plaintiff, and the defendants appeal.

Plaintiff filed his action September 22, 1936, and each of the defendants set up as a defense the statute of limitations, 12 O. S. 1941 § 95, subd. 3.

The record before us contains much

evidence, consisting both of the testimony of witnesses and numerous exhibits. It is virtually conceded by all parties that every pecan tree on the land died as a result of surface and subsurface changes. The parties differ materially with respect to the cause for these surface and subsurface changes, but we do not consider it necessary to consider and discuss this aspect of the case.

It is clear from plaintiff's testimony that he knew these streams were polluted as early as 1923 or 24 and that he made semi-annual inspections up the creeks to ascertain whether salt water and pollutive substances were being put into the creeks and to watch and observe the effect thereof. See Pace v. Massey, 186 Okla. 703, 100 P. 2d 440. His own testimony discloses that pecan trees began to die as early as 1929, as is evidenced by the following question and answer from his direct examination: "Q. When did you first notice these pecan trees beginning to die? A. Well, sir, they begin to die, a few in 1929, down Euchee creek where the oil and salt water come in and spread over the land." He said that he commenced watching his property after the oil and salt water came down and killed the trees. He testified in response to a direct question that it took 4 years for the entire grove to die. He testified also that the last trees died in 1936, "they just kept on dying." The testimony of other witnesses introduced by him varied the time the pecan trees began to die, and also varied the period over which the trees died. However, none of his witnesses, and no evidence introduced by the defendants, contradicted plaintiff's own testimony about the time the damage to him began to be obvious.

Under the rule announced in H. F. Wilcox Oil and Gas Co. v. Juedeman, 187 Okla. 382, 101 P. 2d 1050, it is clear that plaintiff's injury came from a permanent source and that the injury done was of a permanent nature, and that it was observed by him and known to him more than two years before he filed the action that he was being thus injured

from such a source. See Pine v. Duncan, 179 Okla. 336, 65 P. 2d 492, and other cases of like effect.

In opposition to this contention, plaintiff argues that while he could see what was happening and believed it was caused from salt water and oil, he did not know or understand how such substances acted to cause the death of trees until within two years of the filing of the action, and therefore he ought not to be bound by the rule just cited. This would be a difficult rule to apply to any case, and particularly in this case because of the changes of theory on the part of plaintiff throughout the trial of the action.

At one stage of the action plaintiff's theory seemed to be that the pollution of these streams caused the natural growth along the banks of the streams to die, and being dead to fall into the stream and bring about a process of siltation whereby the beds of the streams were filled and the polluted waters of the streams then flowed over plaintiff's land, with the resulting injury complained of. At another stage of the action plaintiff's theory seemed to be that the establishment of the drainage district up the creek had the effect of turning it into a canal of swiftly flowing water that swept all debris that fell into it down stream to the vicinity of plaintiff's land, where the creek followed its natural courses and the water flowed more slowly, thus bringing about a huge deposit of such debris, which in turn set up a process of siltation that caused the beds of the streams to fill up and overflow his lands with the polluted waters. At the close of the trial plaintiff, in open court, adopted the defendants' theory that the pecan trees were choked to death or died from exposure to surplus water as the result of interference with the flow of subsurface waters, but with the added element by plaintiff that the interference with the flow of the subsurface waters was in some manner caused by the pollution of the streams. It is to be supposed that it was this last theory that plaintiff now says he

was unaware of as a matter of natural phenomena.

Plaintiff does not cite and we are not aware of any rule of law that permits a party who knows he is being damaged by the pollution of natural streams on his land to wait until he knows and understands the scientific explanation of the injury that is being done to him. The rule announced in the Juedeman case applies here, and ought not to be modified or extended in the manner contended by plaintiff.

There is no occasion to discuss the other errors urged by defendants as the basis for reversal, since we are of the opinion that plaintiff's cause of action was barred by the statute of limitations at the time he filed the action.

The judgment of the trial court is reversed and the cause is remanded, with directions to dismiss plaintiff's action.

GIBSON, V. C. J., and RILEY, OSBORN, and HURST, JJ., concur. ARNOLD, J., dissents. CORN, C. J., and WELCH and DAVISON, JJ., absent.