**ELK CITY, a municipal corporation, Plaintiff in Error,**

v.

**Gertrude RICE, Defendant in Error.**

No. 36112.

Supreme Court of Oklahoma.

July 5, 1955.

Donald Royse, City Atty., and Holland Meacham, Elk City, for plaintiff in error.

Hill & Godfrey, by Houston Bus Hill, Oklahoma City, for defendant in error.

· BLACKBIRD, Justice.

The appearance of the parties to this appeal is the reverse of the order in which they appeared in the trial court, and all reference to them herein will be by their trial court designations.

The action is one for damages to plaintiff's farm from erosion allegedly caused by water of the Red River being diverted against the north bank of said river's channel from its former course along the south bank, said diversion and change in course being allegedly caused by the negligent "construction, operation, maintenance and repair" of defendant's water pipe line which traversed said river and farm.

The right-of-way which the defendant City obtained from plaintiff before constructing the pipe line in 1937 was, by the terms of said parties' easement agreement, for the purpose of repairing and maintaining the line, as well as constructing it. Thereafter, in 1942, high water and/or flood conditions in that vicinity resulted in the "washing out" of a portion of the line crossing the river; and, in 1943, defendant repaired it, burying it under the river bed and laying it deeper under the surface of the earth where it penetrated both banks of the river's channel. In order to accomplish and/or facilitate this work a temporary dam or dike, four or five feet high, was erected, extending partly across the river bed up stream from the line's river crossing. When the work was completed, this dike was not leveled or abolished and the defendant's negligence in failing to do this, which, according to plaintiff's claims, was the principal cause of the river changing its course and beginning to erode its north bank in the direction of her land, is the alleged cause of the damages plaintiff has suffered.

In her petition, she sought recovery of a total of $33,280 as compensation for the alleged injuries to her farm, as if her action was statutory reverse condemnation, and, only in the alternative, did she characterize her alleged cause of action as the common-law one of damages for tort. Before the trial, the court, by order, ruled that her only alleged cause of action was in damages for the defendant's negligence, and this was the theory upon which the cause was submitted to the jury. The verdict was in plaintiff's favor for damages in the sum of $2,750, and judgment was entered accordingly.

The case is presented to this Court both on appeal by defendant and cross appeal by plaintiff. To avoid repetition and serve the purpose of clarity, we will first consider defendant's argument concerning the trial court's alleged error in instructing the jury, along with the plaintiff's contention that said court erred in denying her the right to try the cause as one for condemnation in reverse, rather than as a common-law action for damages.

Article II, § 24 of our State Constitution prohibits the taking of private property for public use without just compensation. Tit. 27 O.S.1951 § 5, authorizes cities to condemn land for public purposes, and Tit. 66 O.S.1951 § 57, provides for owners' recovery when their land has been taken or occupied for public use without having been condemned or purchased. This method is often referred to as "condemnation in reverse". Here there has been no taking or occupancy, without compensation, of any part of plaintiff's land for a public use. The erosion, flooding, washing away, and damages generally to the property of which plaintiff complained, was not a necessary incident to the construction, operation or repair of defendant's pipe line. On the basis of her own position and proof, the

river's course would not have been changed at the particular point that said change occurred, and the river's water have been there diverted to its opposite bank in the direction of her land with the resulting detriment alleged, had it not been for the defendant's failure, after completion of the work, to remove the temporary dike it threw up to facilitate its repairs to and/or re-laying of the pipe line in 1943. Neither the dike nor the pipe line have themselves ever touched, traversed, or encroached upon the property plaintiff claimed to have been lost and/or damaged; nor, from the undisputed evidence, can the dike be said to facilitate the operation, or be a necessary part of, the public utility here involved. Consequently, according to the overwhelming weight of authority, plaintiff's remedy was not, under the statutes relating to eminent domain, but was in damages for tort. See Oklahoma Gas & Elec. Co. v. Miller Bros. 101 Ranch Trust, 173 Okl. 101, 46 P.2d 570; 18 Am.Jur., Eminent Domain, sec. 38; 29 C.J.S., Eminent Domain, § 161.

Defendant's contention that the trial court erred in instructing the jury is based upon said court's refusal to give the fourth of the instructions requested on its behalf. By said instruction, the jury would have been called upon to determine whether plaintiff's damages, if any, "were the natural result or might be regarded as obviously consequential, of the erection of the dike" and would have been told that if they determined that they were, the action was barred and the verdict should be for the defendant. This requested instruction seems to have been based primarily upon the second syllabus of this Court's opinion in Fletcher v. City of Altus, 188 Okl. 342, 108 P.2d 781. In that case, the defendant, in 1927, had constructed a permanent dam to form a lake. Plaintiff's complaint was that by 1934 and 1935 the dam had caused the water of said lake to back up sufficiently to overflow land he had been farming, with the result that the crops thereon during those two years had been damaged. He predicated his entitlement upon his ownership of a share of said crops as a tenant of the land. The trial court sustained defendant's demurrer to said plaintiff's evidence, and, on appeal,

defendant urged affirmance on the ground that since there was no question but that the dam was completed in 1927, any cause of action plaintiff may have had was barred before his crops suffered the claimed injuries in 1934 and 1935. There, this Court, after quoting from Pahlka v. Chicago, R. I. & P. Ry. Co., 62 Okl. 223, 161 P. 544, another case of damages caused from a "permanent" improvement or structure, held that the matter should have been determined by submitting to the jury the issue (referred to therein as one of fact and as being "peculiar to each individual case" [188 Okl. 342, 108 P.2d 783]) of whether or not, at the time the Altus dam was completed in 1927, the injuries plaintiff claimed could have been regarded as the certain, or natural and obviously consequential, result of said dam's construction. That case, however, is different from the one here involved. Here the dam, indicated by a portion of the evidence to have caused the diversion of the water, was no appropriate nor necessary part of the pipe line which constituted the "public improvement", nor was it permanent. For all the record shows, it could, and should, have been removed after the rebuilding of defendant's pipe line across the river in 1943, without affecting the operation of the line in any way. If this had been done, plaintiff's damages would have been abated, or to put it more accurately, her claimed injuries could have been prevented long before 1948, which, according to her own testimony, is the first time her land ever suffered any detriment from the dam's diversion of the river or change of its water course. In that event, any claim for the damages she herein sought would have been both premature and unfounded. As pointed out in the court's reference, in Pahlka v. Chicago, R. I. & P. Ry. Co., supra, to the "predicament" of a plaintiff who brings suit immediately after completion of the construction, before his actual injury, her damages "though liable to have been incurred had neither resulted nor were certain to result", and could have been prevented by timely action on the part of the defendant in removing the dike and doing other things necessary to obviate the effect of its remaining there. By instruction number 12,

the Court limited plaintiff's recovery to that portion of her proven damages incurred within two years immediately preceding the filing of her action; and, it is our opinion that the trial court committed no error in refusing to otherwise instruct the jury on the limitations issue by an instruction such as defendant's requested instruction number 4. However proper the requested instruction might have been in an appropriate "permanent improvement" case, the facts of the present case were not such as to render proper the giving of that instruction in this case.

The defendant also contends that its demurrer to the evidence and motion for directed verdict should have been sustained because the evidence shows that the river's diversion was not caused by the dike. We have carefully examined the record and find that though the evidence on this issue was conflicting, when considered in the proper light for the purpose of ruling upon said demurrer and motion, it was sufficient for submission to the jury. See Independent-Eastern Torpedo Co. v. Price, 208 Okl. 633, 258 P.2d 189.

Plaintiff also contends that the court erred in refusing to sustain her motion for an instructed verdict in the sum of $8,000. No witness for the defendant testified as to the amount of plaintiff's damages. Most of plaintiff's witnesses estimated her damages at $8,000, or more. However, her witness, George Garrett, first testified her land was worth $20,000 or $25,000, in 1948 and 1949, and that, at the time of the trial, it was worth only $18,000 or $20,000. Plaintiff's attorney then went over the question again and the witness placed the land's present value at $12,000, or $14,000. We think the jury had a perfect right to consider this witness' first answer estimating plaintiff's damages as low as $2,000, as well as the higher estimates, in arriving at the amount of its verdict. When the jury viewed the premises, no one had measured the eroded land, but had merely estimated the acreage injured. The jury may have concluded that the eroded portion consisted of a fewer number of acres than some of the witnesses estimated. In view of such con-siderations, we cannot say that the court erred in denying plaintiff's motion for a directed verdict in the sum of $8,000.

The only other alleged error is found in defendant's criticism of the trial court's exclusion from the jury panel, over its objection, of all resident taxpayers of said City. In taking such action, the court expressed the opinion that there was a sufficient number of jurors present who would not be financially or otherwise interested in any result returned, to constitute a jury for the trial of the case. It is pointed out that Tit. 12 O.S.1951 § 572, provides, among other things, with reference to causes for challenging jurors, that a resident and taxpayer of a municipality is not to be disqualified in actions in which said municipality is a party. Here there is no showing that the regular jury panel was exhausted before the jury in this case was selected, or that defendant exercised all of its allowable peremptory challenges. Nor does defendant show that the jury was prejudiced in any manner, or that jurors who were its residents and taxpayers would have been more favorable than those selected. Assuming, without deciding, that on the basis of the cited statute, the trial court's action was error, it is our opinion that in view of Tit. 38 O.S.1951 § 29, it was a harmless one.

As we have found in the arguments of plaintiff and defendant no cause for reversal, the judgment of the trial court is hereby affirmed.

JOHNSON, C. J., and WELCH, CORN, ARNOLD and JACKSON, JJ., concur.

WILLIAMS, V. C. J., and HALLEY, J., dissent.

HALLEY, Justice (dissenting).

The majority opinion holds that the court did not err in refusing to give to the jury defendant's requested Instruction No. 4, which is as follows:

"Gentlemen of the Jury you are instructed that if you find from the preponderance of the evidence that the defendant constructed a dyke in 1943

above the water pipe line and if you further find that the injuries complained of were the natural result or might be regarded as obviously consequential, of the erection of such dyke, then and in that event plaintiff is barred from bringing this action and you are instructed to bring in a verdict for the defendant."

I think the above instruction should have been given to the jury to enable it to determine whether or not plaintiff's claim is barred by the statute of limitations. The defendant urged the question of limitations in its demurrer.

Subdivision 3, section 95, 12 O.S.1951, provides that an action for trespass upon real property must be brought within two years.

We have held in numerous cases that the question of when a cause of action accrues for damages to real property resulting from a public improvement depends upon whether or not the injuries complained of as resulting to land from the erection of a public improvement are the natural and obvious consequence of such public improvement, or the result of negligent maintenance, repair or operation of such public improvement.

If the injuries suffered are the natural and obviously consequential result of the erection of such improvement, then the cause of action arises immediately and the two-year statute above mentioned is applicable.

If the injuries are not the natural and obvious result of the erection of the public improvement, the statute of limitations is set in motion when the injury occurs as a result of negligent operation, maintenance, or repair of the public improvement.

In Fletcher v. City of Altus, 188 Okl. 342, 108 P.2d 781, the rule is announced in the second paragraph of the syllabus as follows:

"Whether a cause of action for injuries resulting from the erection of a permanent public improvement arises upon the completion of the improvement depends upon a determination of the issue of fact as to whether the injuries complained of are the natural result, or may be regarded as obviously consequential, of the erection of such permanent improvement, and such issue of fact should be submitted to the jury for determination, as a prerequisite for determining whether or not such action is barred by the statute of limitations."

More recently we announced in the syllabus in City of Collinsville v. Swisher, 196 Okl. 57, 162 P.2d 324, as follows:

"The statute of limitations is set in motion to an action for damages for such injuries as were the natural and obvious result of the erection of permanent improvements at the time of the completion thereof, but this rule does not apply to such other injuries as subsequently result from the negligent maintenance or operation of such improvements, and the limitation as to the latter is set in motion at the time such injuries occur."

See also Murduck v. City of Blackwell, 198 Okl. 171, 176 P.2d 1002.

The evidence shows that the pipeline was erected in 1937, but that in 1943, the line washed out and had to be relaid under the river bed. The erosion which injured plaintiff's land was claimed to be the result of the erection of a dyke on the up-stream side of the pipe line to divert the channel of the river from the south side to enable them to lay the pipe line under the channel of the river which was then along the south bank.

There is evidence that this obstruction diverted the channel of the river from the south bank in a north or northeast direction where it reached and eroded plaintiff's land. Some of the witnesses were positive that the dyke caused the injuries suffered by plaintiff, while others thought it had nothing to do with such injuries, but that the river changed its course often and that in that case the channel naturally followed the pipe line in a northeasterly direction toward plaintiff's land because the deep ditch dug for the pipe line was

filled with loose dirt which the channel of the river naturally followed and washed out.

If plaintiff's injuries were the natural and obvious consequential result of the erection of the dyke in 1943, her cause of action arose at that time and the statute of limitations began to run, barring her from recovery at the expiration of two years from 1943. If the injuries suffered were not the natural and obvious result following defendant's negligent acts in 1943, her cause of action arose only when the injuries actually occurred. This then became a question for the jury to determine and should have been presented for its consideration by requested Instruction No. 4. I therefore dissent.