**N.C. CORFF PARTNERSHIP, LTD.,** Virginia Ruth Corff, John C. Corff, Richard G. Corff, Alice Louise Corff McGuire and Barbara Marie Corff Carter, Individually and as General Partners of N.C. Corff Partnership, Ltd., Appellants,

v.

**OXY USA, INC.,** Appellee.

Nos. 86604, 86605.

Court of Appeals of Oklahoma, Division No. 4.

July 30, 1996.

Rehearing Denied Sept. 17, 1996.

Certiorari Denied Nov. 19, 1996.

Robert N. Barnes, Patranell Britten Lewis, Barnes, Smith & Lewis, P.C., Oklahoma City, for Appellants.

Steven J. Adams, J. Randall Miller, Gardere & Wynne, L.L.P, Tulsa, for Appellee.

TAYLOR, Presiding Judge.

Plaintiffs appeal from the trial court's grant of summary judgment to Defendant, OXY USA, Inc. (OXY), in this action for alleged pollution of groundwater by OXY's operation of oil and gas wells on or near Plaintiffs' property. Plaintiffs also seek review of the trial court's ruling dismissing the general partners of N.C. Corff Partnership, Ltd. (Partnership) as parties to the case. We reverse and remand.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs filed this action on April 23, 1992, seeking an injunction and damages based on theories of recovery sounding in public and private nuisance, trespass, restitution (unjust enrichment), and constructive fraud. In addition to Partnership, the original plaintiffs included Partnership's five general partners, Virginia Ruth Corff (who also is managing partner), John C. Corff, Richard G. Corff, Alice Louise Corff McGuire, and Barbara Marie Corff Carter (collectively, "Partners"). The petition alleged OXY, a former oil and gas lessee, had operated wells on property owned by Plaintiffs or adjacent thereto, and that OXY had either improperly operated or improperly plugged the wells, resulting in elevated levels of chloride compounds in groundwater underlying land owned by Partnership.[1]

It is undisputed that the property in question is now, and has been for many years, operated as an industrial park that has been the site of industrial operations that do not include heavy manufacturing. Tenants of the park have included a number of oilfield service companies, including a company known as Homco International, Inc./NL ACME Tool Operations (Homco). From 1927 to 1990, OXY or its predecessor in interest operated a number of oil and gas wells on or near Partnership's property.

By letter dated May 24, 1990, Homco informed Partnership that it had discovered elevated levels of lead, barium, and chromium in the soil of the property it leased, as well as high concentrations of diesel oil in the soil in certain areas. Homco also stated, however, that it had discovered no evidence of groundwater contamination in the environmental audit that had revealed the other contamination.

Though OXY disputes the date when Plaintiffs should have learned of the alleged saltwater contamination, Plaintiffs produced evidence supporting their claim that they did not know the groundwater under the property had been contaminated until August 1991, when elevated chloride levels were measured from a monitoring well drilled by Homco. Since that time, Homco apparently has remediated at least a portion of the property it leased. Plaintiffs assert Homco's actions have not damaged the groundwater in any

---

1. The original petition also alleged the individual Partners owned the minerals underlying the surface estate.

respect. Plaintiffs also have installed a number of additional monitoring wells, which, according to their experts' deposition testimony and test results, show chloride levels higher than originally indicated, as well as groundwater contamination that could only have come from oilfield operations.

Following extensive discovery, OXY filed two separate motions for summary judgment. The first motion asserted the individual Partners were not proper parties to the action because they lacked cognizable claims for damage allegedly done to property owned by Partnership.[2] OXY's second motion sought judgment on the merits of Partnership's claim, asserting the undisputed facts showed OXY could not be liable as a matter of law. The trial court granted both motions. Plaintiffs have appealed.[3]

## TRIAL COURT'S GRANT OF OXY'S FIRST SUMMARY JUDGMENT MOTION AS TO PROPER PARTIES PLAINTIFF

■ OXY's first summary judgment motion asserted Partners did not have legal standing—either as individuals or as general partners—to assert claims against OXY for damage to property owned by Partnership. It points to undisputed facts showing that title to the surface was solely in Partnership's name, and that Partners owned no interest in the property as individuals. The trial court agreed with this argument. We do not, finding instead that Partners are entitled to bring this action as a matter of law.

■ We note, first, that a trial court may grant summary judgment only if the record presented—viewed in favor of the party opposing the motion—reveals uncontroverted material facts failing to support *any* legitimate inference in favor of that party. *First Nat'l Bank and Trust Co. of Vinita v. Kissee,* 859 P.2d 502 (Okla.1993). The movant must also be entitled to judgment as a matter of law.

Here, it is undisputed that Partners are general partners, and that Partnership is the sole surface owner. It also is undisputed that Partners have personally guaranteed certain debts of Partnership. Under Oklahoma law, management responsibility for limited partnerships falls upon the entity's general partners, who ultimately also are held liable individually to third persons for the debts and liabilities of the partnership. *See* 54 O.S.1991 §§ 150, 215, and 325. Determining rights and liabilities concerning alleged contamination of Partnership property, its cause, and its abatement, necessarily involves adjudicating rights and liabilities of Partnership, which also may be subject to liability for maintaining a nuisance due to its status as a property owner. 50 O.S.1991 § 5. Because of the general partners' ultimate liability for Partnership's liabilities, they have an interest in participating in proceedings in which those liabilities are being determined.

OXY's argument that Oklahoma statutes and case law preclude Partners from participating as plaintiffs in this action is misplaced. While it is true that 12 O.S.1991 § 2017, permits partnerships to sue and be sued in their own name, there is nothing in section 2017, or any other statutory provision, that specifically abrogates the right of general partners to bring an action in the name of, and on behalf of, the partnership. In fact, 54 O.S.1991 § 167, indicates just the opposite, stating that a general partner is excepted from the rule that a contributor to a limited partnership is not a proper party to an action "by or against a partnership." Accordingly, Partners are proper parties to this action, and the trial court's decision otherwise was in error.

## TRIAL COURT'S GRANT OF OXY'S SECOND SUMMARY JUDGMENT MOTION GOING TO MERITS OF PARTNERSHIP'S CLAIM

In its second summary judgment motion, OXY asserted that Plaintiffs' knowledge of

---

2. It is not clear from the record whether Partners are working interest owners in the wells. Their potential individual liability as mineral interest owners is not an issue.

3. Plaintiffs lodged two separate appeals, Nos. 86,604 and 86,605, from the trial court's grant of OXY's motions. The appeals were consolidated by the supreme court (under surviving No. 86,-604) by order dated December 20, 1995.

certain undisputed facts established—as an undisputed fact—that Plaintiffs knew or should have known their property was permanently damaged by OXY's operations more than two years before this action was filed. Alternatively, OXY asserted the undisputed facts showed Plaintiffs could not establish the existence of (1) damages or legal injury, (2) a nuisance, (3) unjust enrichment, and (4) constructive fraud, as a matter of law.

■ The trial court did not state its grounds for granting OXY's second summary judgment motion, which went to the merits of Plaintiffs' claim. Because the court's order disposed of the entire action, however, we presume the basis for the decision was one that would have barred Plaintiffs' claim in its entirety, i.e., either the undisputed facts showed the action was barred by the applicable statute of limitations, or they showed the absence of an element of proof that was essential to any theory of recovery as a matter of law.

■ As noted above, summary judgment is proper only if the record reveals uncontroverted material facts failing to support *any* legitimate inference in favor of that party. *Kissee*, 859 P.2d at 505. The Oklahoma Supreme Court has specifically directed that the materials attached to a party's response to a motion for summary judgment are "not to be held to the standard of competent, admissible evidence." *Davis v. Leitner*, 782 P.2d 924, 926 (Okla.1989). Rather, it is sufficient that the materials "reasonably show the judge who is considering the motion that the party opposing the motion will be able at the time of trial to present competent, admissible evidence" to support the party's allegations. *Id.* It also is well-settled in Oklahoma that a plaintiff is not required to prove his entire case in order to avoid a motion for summary judgment, but must show only that a controversy exists. *Gilmore v. St. Anthony Hospital*, 598 P.2d 1200, 1205 (Okla.1979).

■ In its trial court brief, OXY argued the following facts were undisputed:

1. That decades of industrial tenant operations had polluted the property with oil field wastes and heavy metals.

2. That the presence of a tank battery and pit at the eastern boundary of the property ... had damaged the property [during the 1980s].

3. That the surface release of petroleum products and surface conditions on-site indicated or had caused pollution of the groundwater under the property.

4. That legal action could be taken by the Partnership against the person or entity believed to have caused the pollution and that any such action must be taken within two years of the injury.

OXY asserted that, because Partnership allegedly knew of these facts more than two years before the lawsuit was filed, the facts established as a matter of law that Partnership "knew or reasonably should have known by April 24, 1990, that its groundwater was polluted," and, therefore, its claim was barred.

■ The statute of limitations applicable to nuisance claims in Oklahoma is two years. To the extent damages caused by a nuisance are temporary in nature—i.e., damages reasonably capable of abatement—they will be held not permanent and the statute will not begin to run until injury is suffered. *See Elk City v. Rice*, 286 P.2d 275 (Okla.1955); *City of Ardmore v. Orr*, 35 Okla. 305, 129 P. 867 (1913); *Haenchen v. Sand Products Co.*, 626 P.2d 332 (Okla.Ct.App.1981). Recoverable damages are limited to the two years immediately preceding the filing of the action, however. If the nuisance is not abatable (i.e., is permanent), then the statute begins to run at such time as it becomes obvious and apparent that the land in question has been permanently damaged. *See Skelly Oil Co. v. Humphrey*, 195 Okla. 384, 158 P.2d 175 (1945); *Shell Oil Co. v. Vanderslice*, 192 Okla. 690, 138 P.2d 841 (1943).

■ Oklahoma also applies the "discovery rule" to determine the date when the statute of limitations begins to run, however, recognizing that in some circumstances a plaintiff may not become aware of an injury until after the statute of limitations has expired. In such a case the statute is tolled "until such time as a reasonable person under the circumstances of the case would have

discovered the injury" and resulting claim. *Weathers v. Fulgenzi,* 884 P.2d 538, 541 (Okla.1994). But " 'if the means of knowledge exist and the circumstances are such as to put a reasonable [person] upon inquiry, it will be held that there was knowledge of what could have been readily ascertained by such inquiry....' " *Id.* (quoting *Daugherty v. Farmers Co-op. Ass'n,* 689 P.2d 947, 950–51 (Okla.1984)).

Here, the record does not establish as undisputed, as OXY asserts, that "decades of industrial tenant operations had polluted the property with oilfield wastes and heavy metals," or that the surface release of some substances caused pollution to the soil and groundwater. Plaintiffs presented evidence that they were unaware of *any* harm to the groundwater until mid–1991.

 OXY's reference to evidence concerning various types of soil contamination that have occurred on the property since the late 1970s is insufficient—by itself—to establish as "undisputed" that Plaintiffs should have known of contamination from OXY's oilfield operations. As OXY itself argues, as oil and gas lessee, it was entitled to the reasonable use of the surface estate. Such use was limited, however, against unreasonable or unwarranted use that "works an obstruction or injury to the right of another." *Briscoe v. Harper Oil Co.,* 702 P.2d 33, 36 (Okla.1985).

The type of harm that can result from exploration and production operations, and the extent to which a landowner reasonably should be expected to be aware of such consequences, is a fact issue that may even require testimony by experts to establish. We see no such evidence in the record presented to the trial court here. We reject OXY's argument that Plaintiffs' knowledge of some contamination to *some* portions of the property over the years indisputably established, as a matter of law, that Plaintiffs possessed such information that should have caused them to reasonably inquire or further investigate contamination from OXY's oilfield operations.

 OXY also argued the undisputed facts proved that Partnership had not suffered damages, or "legal injury," and therefore could not establish a prima facie case on any theory. In support of this argument, OXY cited Partnership's own admission that it does not currently use or need the affected groundwater, and that none of its tenants use or need the groundwater. As such, OXY argued, there was no damage to the property, and therefore no claim. Along a similar vein, OXY argued that because there was no current use of the groundwater, the alleged contamination did not interfere with Partnership's use of the industrial park, and there could be no right of action for nuisance as a matter of law.

 "[I]n order to maintain a cause of action for nuisance, the plaintiff must prove an unlawful act or omission of duty which either injured or endangered his use of his property." *Thompson v. Andover Oil Co.,* 691 P.2d 77, 83 (Okla.Ct.App.1984). The plaintiff need not show that the defendant's actions were unreasonable; rather, it need only be shown that the resulting burden on the plaintiff is unreasonable. *Restatement (Second) of Torts* § 822 comment b. Ordinarily, the question of whether a nuisance exists, and its resulting damages, present fact questions for the jury. *Smicklas v. Spitz,* 846 P.2d 362 (Okla.1992).

Plaintiffs presented evidence to the trial court showing that chloride levels in the groundwater exceeded safe drinking water standards, and that the appraisal value of the property had decreased by more than $2 million. Evidence also was included to the effect that Partnership had been turned down for refinancing at least twice because of possible contamination, and that Plaintiffs' continued operation of the industrial park was seriously threatened as a result. Diminished value has been recognized by the Oklahoma Supreme Court as legally sufficient to support a nuisance claim, particularly when accompanied by physical injury to the property. *See City of Shawnee v. Bryant,* 310 P.2d 754 (Okla.1957); *McKay v. City of Enid,* 26 Okla. 275, 109 P. 520 (1910). We believe that the evidence introduced by Plaintiffs as to the type of inconvenience and injury that the property has suffered so far is legally sufficient to raise a fact issue as to

whether a nuisance exists. Therefore, to the extent the trial court sustained OXY's second summary judgment motion on this ground, it was in error.

Our finding that Plaintiffs' response to OXY's motion demonstrated that fact issues exist as to their nuisance theory of recovery provides sufficient basis for us to reverse the trial court's decision, and remand for further proceedings. Although we have determined that the grant of summary judgment must be reversed, we briefly address the parties' arguments concerning Plaintiffs' other theories of recovery—i.e., unjust enrichment, public nuisance, and constructive fraud.

 OXY asserted in the trial court that Partnership was not entitled to make an alternative claim for unjust enrichment because such a claim legally is unavailable to a party who has an available tort claim with an established measure of damages. OXY cited no authority for this proposition, and we are aware of none. Oklahoma procedure clearly permits pleading alternative remedies, just as it allows alternative theories of recovery, as long as plaintiffs are not given double recovery for the same injury.

 The term "unjust enrichment" describes a condition resulting from the failure of a party to make restitution in circumstances where it is inequitable. It is a recognized ground for recovery in Oklahoma.

> A right of recovery under the doctrine of unjust enrichment is essentially equitable, its basis being that in a given situation it is contrary to equity and good conscience for one to retain a benefit which has come to him at the expense of another.... [It] arises not only where an expenditure by one person adds to the property of another, but also where the expenditure saves the other from expense or loss.

66 Am.Jur.2d *Restitution and Implied Contracts* § 3 (1973); *see also McBride v. Bridges,* 202 Okla. 508, 215 P.2d 830 (1950). Before a party will be entitled to recover for unjust enrichment, however, "there must be enrichment to another coupled with a resulting injustice." *Teel v. Public Serv. Co. of Okla.,* 767 P.2d 391, 398 (Okla.1985) (superseded by statute on other grounds). Thus, in

order to recover on grounds of unjust enrichment, Plaintiffs must prove not only that OXY is responsible for contaminating the property, but also that the contamination will not be abated, and that OXY in fact has received an economic benefit thereby.

 OXY also claimed in the trial court that Plaintiffs could not prove public nuisance because they relied on the definition of "public nuisance" found in Oklahoma's Water Pollution Control Act (OWPCA), 82 O.S.1991 § 926.4(A) (amended and renumbered at 27A O.S.Supp.1995 § 2–6–501(A)), which deems pollution of the "waters of the state" to be a "public nuisance." OXY contends instead that the appropriate definition of "public nuisance" is found in 50 O.S.1991 § 2, defining a "public nuisance" as "one which affects at the same time an entire community or neighborhood."

We do not find a conflict between the language of 50 O.S.1991 § 2, and the language of section 926.4(A). The OWPCA clearly deems water pollution to be a "menace to public health and welfare," and declares Oklahoma's public policy to be one of antidegradation of the state's waters. 82 O.S.1991 § 926.2 (amended and renumbered at 27A O.S.Supp.1995 § 2–6–102). It thus appears to us that section 926.4 simply carries the intent of the Oklahoma Legislature into effect, by declaring any pollution of state waters to be of such consequence, in and of itself, as to "affect at the same time an entire community or neighborhood." Our construction of the statutes in this manner does not alter the additional requirement, however, that a party must prove special injury in order to bring an action for abatement of a public nuisance, or for damages. 50 O.S.1991 § 10.

Finally, in the trial court, OXY asserted Plaintiffs could not prove a claim of constructive fraud because Oklahoma law requires that the parties to such a claim have a confidential or fiduciary relationship. Though Plaintiffs denied that a confidential or fiduciary relationship is required, they admitted that a constructive fraud claim does require, at the least, proof that the parties involved had a "special" relationship by which it is clear that they were not dealing with one

another at arm's length. Plaintiffs asserted they were misled, to their prejudice, because OXY did not warn them, or keep them informed, about pollution endangering their property.

Constructive fraud is statutorily defined in Oklahoma as "any breach of duty which, without an actually fraudulent intent, gains an advantage to the person in fault, or any one claiming under him, by misleading another to his prejudice, or to the prejudice of anyone claiming under him." 15 O.S.1991 § 59. The definition implies that there must be actual knowledge, by the person accused of fraud, of information concerning the matter at issue, the non-disclosure of which, when there is a duty to disclose, is prejudicial to the person claiming damage. In *Gulf Oil Corp. v. McCoy*, 416 P.2d 948 (Okla.1966), the Oklahoma Supreme Court implicitly acknowledged that an operator does have a duty to warn of contamination. However, we believe that such a duty does not extend to warning about matters of which an operator itself is unaware. Thus, if a plaintiff cannot show that an operator actually knew of contamination at a particular site, then the operator's failure to "disclose" such contamination cannot form the basis for recovery under a constructive fraud theory.

## OXY'S MOTIONS FOR ATTORNEY FEES AND COSTS ON APPEAL

OXY has filed motions in each appeal requesting an award of attorney fees and costs for appeal-related services. Inasmuch as we reverse the order of the trial court, pursuant to 12 O.S.1991 § 978, costs for appeal-related services, including attorney fees, are denied.

REVERSED AND REMANDED FOR FURTHER PROCEEDINGS IN ACCORDANCE WITH THE VIEWS EXPRESSED HEREIN.

RAPP, C.J., and GOODMAN, J. (sitting by designation), concur.