**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

MAX OIL COMPANY INC., an Oklahoma
Corporation; MAX HAWKINS, an
individual; REBECCA HAWKINS, an
individual; JOE HAWKINS, an individual,
a/k/a Joe Max Hawkins,

        Plaintiffs - Appellants,

v.

RANGE PRODUCTION COMPANY
LLC, a foreign limited liability company;
RANGE RESOURCES MID-
CONTINENT LLC, a foreign limited
liability company,

        Defendants - Appellees.

No. 16-6238
(D.C. No. 5:16-CV-00539-W)
(W.D. Okla.)

**ORDER AND JUDGMENT**[*]

---

   [*] After examining the briefs and appellate record, this panel has determined unanimously to honor the parties' request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore submitted without oral argument.

   This order and judgment is an unpublished decision, not binding precedent. 10th Cir. R. 32.1(A). Citation to unpublished decisions is not prohibited. Fed. R. App. 32.1. It is appropriate as it relates to law of the case, issue preclusion and claim preclusion. Unpublished decisions may also be cited for their persuasive value. 10th Cir. R. 32.1(A). Citation to an order and judgment must be accompanied by an appropriate parenthetical notation – (unpublished). *Id.*

Before **HARTZ**, **O'BRIEN**, and **PHILLIPS**, Circuit Judges.

---

Max Oil Company and Max, Rebecca, and Joe Hawkins (Hawkins Family) sued Range Production Company LLC and Range Resources-Midcontinent LLC (collectively Range), alleging Range's oil and gas drilling operations permanently damaged their producing oil and gas wells. The district judge dismissed the petition with prejudice as time-barred. Max Oil and the Hawkins Family complain: (1) the statute of limitations did not begin to run until they eliminated other causes for the damage; and (2) they should have been granted leave to amend their petition. But their own allegations show they knew or had good reason to believe Range's drilling operations were the cause of their damages well before they eliminated other causes. And dismissal with prejudice was appropriate because they never made a proper motion to amend. We affirm.

## I.  Background

The Hawkins Wells (Hawkins 1A-32, Heidi-Hawkins 2, and Hawkins #1) produce oil and natural gas from the Red Fork and Oswego formations in Kay County, Oklahoma. The Mississippian formation underlies the Hawkins Wells and their producing formations.

Max Oil owns and operates the Hawkins Wells. The Hawkins Family owns the surface of the property on which the wells reside and conduct farming operations in and around the wells. Max and Rebecca own all the minerals underlying the property and Joe works as a contractor for Max Oil. Prior to December 2013, the Hawkins Wells were profitable and capable of producing 130,000 cubic feet of natural gas (130 MCFD) per

day and over 4 barrels of oil (4 BOD) per day.  The Hawkins Family used a portion of the natural gas to fuel their farm's irrigation pumps.  The oil and remaining natural gas were sold to outside companies.

In August 2011, Max and Rebecca entered into a "Lease Commitment Agreement" with Range wherein they agreed to have installed a cast iron plug in the Hawkins Wells in order to isolate upper production zones from the Mississippian Formation.  (Appellant's App'x at 152.)  In August 2013, the Oklahoma Corporation Commission pooled the rights of the oil and gas owners in the Mississippian Formation and designated Range as the operator of the pooled unit.  It also granted Range a permit to drill the Tower Wells (Tower 32-4S and Tower 32-5S).

Four months later, on December 10, 2013, Range completed the Tower 32-4S well with a hydraulic fracturing treatment.[1]  On that date, Max Oil discovered the Heidi-

---

[1] A horizontal well is created by drilling a vertical hole, called a well bore, deep into the earth to the strata where the oil and gas exist.  The well bore then curves approximately 90 degrees and becomes horizontal.  A metal pipe, called a casing, is placed in the well bore.  Cement is pumped through the casing; when the cement reaches the bottom of the casing, it is forced out the end and pushed up a certain distance between the outside of the casing and the inside wall of the well bore.  The hardened cement between the casing and earth serves two important purposes: (1) it bonds the casing to the well bore/earth and (2) it ensures that oil and gas from the well won't leak into the water table.  Cement is also placed above and below any freshwater aquifer to prevent merger between the aquifer and contaminants from other sources.  A special tool, called a perforating gun, is then lowered to the production layer and fired to create holes through the casing and cement and into the targeted strata.  Sand, water, and chemical additives are then pumped into the well at high pressures to crack the strata in the horizontal portion of the well.  It is called fracking.  The cracks or fracs, held open by the sand, release the trapped oil and gas from the formation.  Once the downward pressure is removed from the well, the oil and gas from the producing formation flows into the

(Continued . . .)

Hawkins 2 well began "producing a great deal of water which restricted [its] flow of oil and gas." (Appellant's App'x at 31.) On March 6, 2014, Range completed the Tower 32-5S well, also with a hydraulic fracturing treatment. On that same day, Max Oil discovered that the Hawkins 1A-32 and Hawkins #1 wells "began producing a great deal of water which restricted the flow of oil and gas [from them]." (*Id.*) "[B]ecause of the time proximity of the increased water production in the Hawkins Wells to the fracture treatments of the Tower Wells" and because "water production in the Hawkins Wells increases substantially" "when the pumps in the Tower Wells are not operating," "Max Oil determined that the fracture treatment completions of the Tower Wells encroached into the formations being produced in the Hawkins Wells." (*Id.*)

Max Oil and the Hawkins Family (hereinafter Max Oil) attempted to informally settle their damages with Range. When those efforts failed, Max Oil retained an attorney. On September 8, 2015, the attorney wrote to Range accusing it of damaging the Hawkins Wells. In response, Range claimed the damage to the Hawkins Wells resulted from a failure either of the plug (used to isolate the Wells from the Mississippian Formation) or of the cement encasing the well bore. To dispel that notion, on December 15, 2015, Max Oil tested and verified the integrity of both the plug and cement.

On April 25, 2016, Max Oil sued Range in Oklahoma State court alleging negligence, trespass, nuisance, and conversion. Range removed the lawsuit to federal court a month later and filed a motion to dismiss arguing, *inter alia*, that the claims were

---

casing so that it can be pumped to the surface through the tubing.

time-barred under the two-year statute of limitations, Okla. Stat. Ann. tit. 12, § 95(3). According to Range, the petition shows Max Oil knew, or with reasonable diligence should have known, by December 10, 2013, and March 6, 2014, of the basis of its claims. Therefore, it had until at the latest March 6, 2016 in which to file its petition.

The judge agreed. He said the basis of the lawsuit was "Range's allegedly tortious conduct that severely restricted the flow of oil and gas in the Hawkins Wells and directly caused permanent damage" to them. (Appellant's App'x at 337 (citation and quotations omitted).) As the allegations in the petition revealed, the restricted flow of oil and gas in the Heidi-Hawkins 2 was apparent on December 10, 2013, the date the Tower 32-4S was completed, and in the Hawkins 1A-32 Well and the Hawkins #1 Well on March 6, 2014, the date the Tower 32-5S Well was completed. He rejected any notion that the limitations period was tolled until December 2015 when Max Oil verified the cause of the loss of production or that it was tolled while Max Oil worked with Range to ascertain the cause of the loss. Finally, he concluded the 15-year statute of limitations applicable to certain trespass claims did not apply. The judge dismissed the petition with prejudice concluding any amendment would be futile.

## II. Discussion

Although the statute of limitations is an affirmative defense, dismissal under Fed. R. Civ. P. 12(b)(6) is appropriate "when the dates given in the complaint make clear that the right sued upon has been extinguished." *Aldrich v. McCulloch Props., Inc.*, 627 F.2d 1036, 1041 n.4 (10th Cir. 1980). "We review de novo a Rule 12(b)(6) dismissal." *Elm Ridge Expl. Co., LLC v. Engle*, 721 F.3d 1199, 1210 (10th Cir. 2013). Because our

- 5 -

jurisdiction sounds in diversity, we apply Oklahoma substantive law, including its statute of limitations. *Id.*

Although it raised other claims in its petition, Max Oil's arguments on appeal are limited to trespass and nuisance.[2]

*A. Trespass*

"Trespass involves an actual physical invasion of the real estate of another without the permission of the person lawfully entitled to possession." *Williamson v. Fowler Toyota, Inc.*, 956 P.2d 858, 862 (Okla. 1998); *see also Fairlawn Cemetery Ass'n v. First Presbyterian Church, U.S.A. of Okla. City*, 496 P.2d 1185, 1187 (Okla. 1972) ("[T]respass involves an actual physical invasion of the property of another."). "An action for trespass upon real property" must be brought within two years "after the cause of action shall have accrued." Okla. Stat. Ann. tit. 12, § 95(A)(3); *see also Harper-Turner Oil Co. v. Bridge*, 311 P.2d 947, 949 (Okla. 1957) ("[A]n action for trespassing on real property can only be brought within two years after the cause of action shall have accrued."). "[A] cause of action accrues at the time when a plaintiff first could have maintained his action to a successful conclusion." *Okla. Brick Corp. v. McCall*, 497 P.2d 215, 217 (Okla. 1972).

---

[2] Max Oil makes only one argument concerning negligence: "A negligence claim accrues when any injury to the plaintiff, for which an action could proceed, is certain and not merely speculative." (Appellants' Op. Br. at 13.) This is insufficient to invoke our appellate review of its negligence claim. *See Holmes v. Colo. Coal. for Homeless Long Term Disability Plan*, 762 F.3d 1195, 1199 (10th Cir. 2014) (collecting cases). Max Oil does not raise its conversion claim on appeal.

Max Oil argues the statute of limitations did not begin to run on its trespass claim until December 15, 2015, when it knew Range was the cause of its damages. Prior to that time, it says, whether Range caused the damage to the Hawkins Wells was speculative because it had not eliminated the plugging or cementing as causes. We disagree.

According to its own allegations, Max Oil knew (1) Range operated the Tower Wells; (2) Range completed the Tower Well 32-4S and Tower Well 32-5S with a hydraulic fracturing treatment on December 10, 2013, and March 6, 2014, respectively, and (3) the Hawkins Wells began producing a great deal of water restricting the flow of oil and gas on those dates. Importantly, it alleges that due to the timing of events, as well as the fact that water production in the Hawkins Wells increased substantially when the pumps in the Tower Wells are not operating, it determined Range's completion of the Tower Wells encroached into the formations underlying the Hawkins Wells. In other words, Max Oil knew or should have reasonably believed by March 6, 2014, that Range's completion of the Tower Wells caused damage to the Hawkins Wells. It did not file its petition until April 2016, beyond the two-year limitations period.

Max Oil balks. It says filing suit before eliminating the plug and cement as causes would have subjected it to sanctions under Fed. R. Civ. P. 11(b)(3). It also claims it should not be punished for first attempting to settle informally with Range in an effort to avoid litigation. But that is exactly what statutes of limitations are for—to allow the plaintiff adequate time to investigate, negotiate, and prepare to litigate while also preventing prejudice to defendant by delay. *See Gabelli v. S.E.C.*, --- U.S. ---, 133 S. Ct. 1216, 1221 (2013) ("Statutes of limitations are intended to promote justice by preventing

surprises through the revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared.") (quotation marks omitted).

Rule 11(b)(3) provides:

By presenting to the court a pleading, written motion, or other paper—whether by signing, filing, submitting, or later advocating it—an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:

(3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery.

Subsection (c) of the rule allows sanctions to be imposed for a violation of subsection (b).

Rule 11(b)(3) does not "relieve litigants from the obligation to conduct an appropriate investigation into the facts that is reasonable under the circumstances" nor is it "a license to join parties, make claims, or present defenses without any factual basis or justification." Fed. R. Civ. P. 11(b), (c) advisory committee's note to 1993 amendment. However, the rule recognizes "that sometimes a litigant may have good reason to believe that a fact is true or false but may need discovery, formal or informal, from opposing parties or third persons to gather and confirm the evidentiary basis for the allegation." *Id*.

Given the allegations in the petition, by March 6, 2014, Max Oil had good reason to believe Range's drilling operations had encroached into the Hawkins Well formations and caused damage. At that time, not one but all three of the Hawkins Wells began watering out. And, according to the petition, they did so on the exact dates Range completed hydraulic fracturing of the Tower Wells. A coincidence? Probably not.

Nonetheless, even if some doubt remained, the proper course would have been for Max Oil to file suit and state in its petition that its factual contentions are made on "information and belief." *Id.* If, after further investigation, it could not support a contention, it could have and without fear of sanctions simply not "persist[ed] with that contention" or, if necessary, dismissed the lawsuit. *Id.*; *see also PAE Gov't Servs., Inc. v. MPRI, Inc.*, 514 F.3d 856, 858-59 (9th Cir. 2007) ("At the time a complaint is filed, the parties are often uncertain about the facts and the law; and yet, *prompt filing is encouraged and often required by a statute of limitations*, laches, the need to preserve evidence and other such concerns.") (emphasis added).

We commend Max Oil for attempting to informally settle its dispute with Range rather than immediately resorting to litigation. But those attempts do not isolate it from the statute of limitations. We have found no Oklahoma authority, and Max Oil cites none, allowing settlement attempts to toll or waive the limitations period.[3] And Max Oil does not allege that Range should be estopped from raising the time bar. *See Jarvis v. City of Stillwater*, 732 P.2d 470, 472-73 (Okla. 1987) (recognizing a defendant may be estopped from raising a time bar if it gave plaintiff "some assurance of settlement negotiations reasonably calculated to lull the plaintiff into a sense of security and delay

---

[3] The Oklahoma Governmental Tort Claims Act allows the parties to agree in writing to extend the statute of limitations for tort claims against the State and its agencies "for the purpose of continuing to attempt settlement of the claim" but such extension is limited to no "longer than two (2) years from the date of loss." Okla. Stat. Ann. tit. 51, § 157(B). This statute does not apply here and, even if it did, there is no such written agreement between the parties.

action beyond the statutory period" or "an express and repeated admission of liability in conjunction with promises of payment, settlement or performance" or it engaged in "any false, fraudulent or misleading conduct or some affirmative act of concealment to exclude suspicion and preclude inquiry" which induced the plaintiff to refrain from timely bringing an action).

As a final straw, Max Oil argues its petition should not have been dismissed with prejudice; it should have been allowed it to amend its petition. It could then have sought removal of Range's encroachment as part of its continuing trespass claim, thereby taking advantage of a 15-year statute of limitations. *See* Okla. Stat. tit. 12, § 93(4); *see also Russell v. Williams*, 964 P.2d 231, 235 (Okla. Civ. App. 1998) (two-year statute of limitations for trespass to land "applies only to actions for damages resulting from [the] trespass"; if the action seeks only to have the encroachment removed, "[t]he statute of limitations . . . is the 15 year period for acquiring title by prescription or adverse possession."). If all that is correct, it should have made a proper request to amend. It did not.

Because Range filed a motion to dismiss, Max Oil was required to seek leave from the court to amend its petition. Fed. R. Civ. P. 15(a)(2). A judge should "freely give leave when justice so requires." *Id*. This liberal amendment policy, however, is not without limits. *Calderon v. Kan. Dep't of Soc. & Rehab. Servs*., 181 F.3d 1180, 1186 (10th Cir. 1999). It must be balanced against Fed. R. Civ. P. 7(b)(1), which requires motions seeking a court order to (1) "be made in writing unless made during a hearing or trial," (2) "state with particularity the grounds for seeking the order," and (3) "state the

relief sought." *Id*. Thus, we require a request for leave to amend to "give adequate notice to the district court and to the opposing party of the basis of the proposed amendment before the court is required to recognize that a motion for leave to amend is before it." *Id*. at 1186-87.

Max Oil made its request at the conclusion of its opposition to the motion to dismiss. It simply said: "Should the Court determine that [its] petition has flaws, [it] would request the Court grant leave to amend prior to dismissing the case and provide [it] an opportunity to correct the flaws." (Appellant's App'x at 208.) That familiar refrain, offered as cover for not being specific, is simply inadequate. It did not give the required notice—it did not inform the judge or Range of the basis for the proposed amendment. We have found similar cursory requests to be insufficient. *See*, *e.g.*, *Calderon*, 181 F.3d at 1185 ("single sentence, lacking a statement for the grounds for amendment and dangling at the end of [Calderon's] memorandum [in opposition to the motion to dismiss], did not rise to the level of a motion for leave to amend"); *see also Garman v. Campbell Cnty. Sch. Dist. No. 1*, 630 F.3d 977, 986 (10th Cir. 2010) (plaintiff's mere suggestion in opposition to dismissal motion that she be allowed to amend if the court concluded her pleadings were infirm is insufficient motion to amend); *Martin v. Hilkey*, 460 F. App'x 760, 762-63 (10th Cir. 2012) (unpublished) (statement in middle of opposition to dismissal motion that "in the event this Court finds that Plaintiffs' Complaint is somehow deficient, Plaintiffs' [sic] would simply ask for leave to file an amended complaint which cures any deficiencies" is inadequate) (quotation marks omitted). In each of these cases, we found no abuse of discretion in refusing leave to

amend when a proper motion was not presented. The same result ensues here.

### B. *Nuisance*

"A nuisance, public or private, arises where a person uses his own property in such a manner as to cause injury to the property of another." *Fairlawn Cemetery Ass'n*, 496 P.2d at 1187. "The statute of limitations applicable to nuisance claims in Oklahoma is two years." *N.C. Corff P'ship, Ltd. v. OXY USA, Inc.*, 929 P.2d 288, 293 (Okla. Civ. App. 1996). However, "[t]o the extent damages caused by a nuisance are temporary in nature—i.e., damages reasonably capable of abatement—they will be held not permanent and the statute will not begin to run until injury is suffered. Recoverable damages are limited to the two years immediately preceding the filing of the action . . . ." *Id.* (citations omitted); *see also Moneypenny v. Dawson*, 141 P.3d 549, 554 (Okla. 2006) ("For . . . temporary damage [caused by a nuisance] a plaintiff may bring successive actions each time the wrong occurs . . . and the statute of limitations would bar recovery only for damage occurring more than two years prior to a suit's filing."). If, on the other hand, "the nuisance is not abatable (i.e., is permanent), then the statute begins to run at such time as it becomes obvious and apparent that the land in question has been permanently damaged." *N.C. Corff P'ship, Ltd.*, 929 P.2d at 293; *see also Moneypenny*, 141 P.3d at 554 ("As to any permanent damage Plaintiff claims was caused, the period of limitation would not commence for such permanent damage to realty until the damage is apparent and it becomes obvious that such damage is of a permanent character.") (quotation marks omitted).

Max Oil argues it alleged a continuing and ongoing nuisance claim—Range's operation of the Tower Wells continues to water out the Hawkins Wells. Thus, it has a viable claim against Range for damages starting April 25, 2014, two years before it filed its petition.

But other than a conclusory statement about the continuing and ongoing nature of the alleged nuisance, Max Oil did not allege that the nuisance and the damages arising therefrom are temporary/abatable. To the contrary, its allegations point to the nuisance and its damages as permanent: "The damage to the Hawkins Wells producing formations caused by the encroachment of the hydraulic fracture treatment into said formations is continuing and permanent" and "[Range's] hydraulic fracture treatment encroach[ment] into the Hawkins Wells producing formations . . . permanently damaged said wells." (Appellant's App'x at 32.) It repeated this in its response to Range's motion to dismiss: "Plaintiffs seek redress for damages caused by improper oil and gas drilling operations conducted by [Range]. In the course of [its] operations, [Range], by and through [its] oil and gas drilling operations, encroached upon and permanently damaged wells owned and operated by [Max Oil]." (*Id.* at 200-201.) And it admitted "it is unclear as to whether removal of the [encroachment] would ever correct [it] and related damages created by [Range]." (*Id.* at 203.)

Even assuming it did not properly plead a temporary nuisance, Max Oil says the judge should have given it the opportunity to amend its complaint to do so. But again, a proper request to amend was never made. The judge cannot be faulted for a lack of prescience.

**AFFIRMED**.

Entered by the Court:

**Terrence L. O'Brien**
United States Circuit Judge